## Exhibit A

**Sale Procedures Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Daily Gazette Company, *et al.*, | ) | Case No. 18-20028 |
| | ) | |
| Debtors.[1] | ) | (Joint Administration Requested) |

### ORDER (A) APPROVING AND AUTHORIZING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL THE DEBTORS' ASSETS, (B) APPROVING AND AUTHORIZING THE BREAK-UP FEE, (C) SCHEDULING THE RELATED AUCTION AND HEARING TO CONSIDER APPROVAL OF THE SALE, (D) APPROVING PROCEDURES RELATED TO THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (E) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND (F) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of orders, pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"), and Rules 6004-1 and 9013-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of West Virginia (the "Local Rules"): (I) (A) approving and authorizing bidding procedures in connection with the sale (the "Sale") of substantially all of the Debtors' assets (as attached hereto as Exhibit 1, the "Bidding Procedures"), (B) approving and authorizing a break-up fee in the amount of $400,000 (the "Break-Up Fee"), (C) scheduling the related auction and hearing to consider approval of Sale;

---

[1]    The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's taxpayer identification number are as follows: Daily Gazette Company (4480); Daily Gazette Holding Company, LLC (2981); Charleston Newspapers Holdings, L.P. (3028), Daily Gazette Publishing Company, LLC (3074), Charleston Newspapers (6079), and G-M Properties, Inc. (4124). The Debtors' headquarters are located at 1001 Virginia St. E, Charleston, West Virginia 25301.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Stalking Horse APA, as appropriate.

(D) approving procedures related to the assumption and assignment of certain executory contracts and unexpired leases, (E) approving the form and manner of notice thereof; and (F) granting related relief (collectively, the "Bidding Procedures Relief"); and (II) (A) authorizing the sale of substantially all of the Debtors' assets free and clear of liens, claims, encumbrances, and other interests, (B) authorizing and approving the Debtors' performance under an asset purchase agreement, (C) approving the assumption and assignment of certain of the Debtors' executory contracts (each, an "Executory Contract") and unexpired leases (each, an "Unexpired Lease") related thereto (any such Executory Contract or Unexpired Lease designated by the Successful Bidder to be assumed and assigned pursuant to the Sale an "Assumed Contract," and collectively, the "Assumed Contracts"); and (D) granting related relief; the Court having reviewed the Motion and the Court having found that (i) the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); (iv) notice of the Motion was sufficient under the circumstances and complied with all applicable requirements of the Bankruptcy Code, Bankruptcy Rules, and Local Rules; and after due deliberation the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates and their creditors; and good and sufficient cause having been shown;

**AND IT IS FURTHER FOUND AND DETERMINED THAT**:

A.      The Debtors have demonstrated good and sufficient reasons for, and the best interests of their estates, creditors, and other parties in interest will be served by, this Court granting, to the extent provided herein, the relief requested in the Motion relating to the Bidding Procedures Relief, including approval of (1) the Bidding Procedures, (2) the Break-Up Fee

provided for in the asset purchase agreement, by and between the Debtors and Wheeling Newspapers, Inc. (the "Stalking Horse Bidder"), dated as of January 30, 2018 (including all exhibits, schedules and ancillary agreements related thereto, and as may be amended, supplemented or modified pursuant to its terms, the "Stalking Horse APA"), which contemplates the Sale of the Purchased Assets to the Stalking Horse Bidder, (3) the procedures described below for the proposed assumption and assignment of the Assumed Contracts and the determination of the amounts necessary to cure defaults under the Assumed Contracts that may be assumed and assigned to the Stalking Horse Bidder, and (4) the forms of the Cure Notice and Sale Notice attached to the Motion as Exhibit D and Exhibit E, respectively.

B.      The Stalking Horse APA and its terms were negotiated by the Debtors and the Stalking Horse Bidder in good faith and at arms-length.

C.      The Debtors have demonstrated good and sufficient reasons for, and the best interests of their estates will be served by, this Court scheduling a Sale Hearing to consider granting the other relief requested in the Motion, including approval of the Sale and the transfer of the Purchased Assets to the Successful Bidder (as defined in the Bidding Procedures) free and clear of all liens, claims, encumbrances and other interests pursuant to section 363(f) of the Bankruptcy Code.

D.      The Break-Up Fee set forth in Section 3.5(b) of the Stalking Horse APA required to be paid under the circumstances described therein to the Stalking Horse Bidder is: (1) an actual and necessary cost of preserving the Debtors' estates within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code; (2) commensurate to the real and substantial benefits conferred upon the Debtors' estates by the Stalking Horse Bidder; (3) reasonable and appropriate in light of the size and nature of the proposed Sale and comparable transactions, the

3

commitments that have been made, and the efforts that have been and will be expended by the Stalking Horse Bidder; and (4) a condition to and necessary to induce the Stalking Horse Bidder to continue to pursue the Sale and to continue to be bound by the Stalking Horse APA.

E.      Unless it is assured that the Break-Up Fee will be available, the Stalking Horse Bidder is unwilling to remain obligated to consummate the Sale or otherwise be bound under the Stalking Horse APA (including the obligations to maintain its committed offer while such offer is subject to higher or otherwise better offers as contemplated by the Bidding Procedures). The Break-Up Fee induced the Stalking Horse Bidder to submit a bid that will serve as a minimum or floor bid for the Purchased Assets on which the Debtors, their creditors and other bidders can rely, and which encourages and facilitates the Auction process. The Stalking Horse Bidder has thus provided a material benefit to the Debtors and their creditors by increasing the likelihood that the best possible purchase price for the Purchased Assets will be realized. Accordingly, the Break-Up fee is reasonable and appropriate and represents the best method for maximizing value for the benefit of the Debtors' estates.

F.      The Bidding Procedures are fair, reasonable, and appropriate and are designed to maximize the recovery from the Sale of the Purchased Assets.

G.      The process for submitting Qualified Bids is fair, reasonable, and appropriate and is designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and parties in interest.

H.      The Cure Notice and Sale Notice (each as defined below) are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of this Order, the Bidding Procedures, the Sale, the Sale Hearing, and any and all objection deadlines related

thereto, including with respect to cure amounts and the assumption and assignment of Executory

Contracts and Unexpired Leases, and no other or further notice is required of the foregoing.

I.      The findings and conclusions set forth herein constitute the Court's findings of

fact and conclusions of law.  To the extent any of the findings of fact constitute conclusions of

law, they are adopted as such.  To the extent any of the following conclusions of law constitute

findings of fact, they are adopted as such.

J.      The entry of this Order (the "<u>Sale Procedures Order</u>") is in the best interests of the

Debtors, their estates, their creditors, and other parties-in-interest.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      The Bidding Procedures Relief is GRANTED as set forth herein.

2.      All objections to the Bidding Procedures Relief requested in the Motion that have

not been withdrawn, waived or settled are overruled on the merits.

3.      The Bidding Procedures attached hereto as <u>Exhibit 1</u> are approved and shall

govern all bids and bid proceedings relating to the Sale of the Purchased Assets.

4.      The Debtors may proceed with the Sale in accordance with the Bidding

Procedures and are authorized to take any and all actions necessary or appropriate to implement

the Bidding Procedures (subject to the terms thereof) in accordance with the following timeline:

| **Proposed Sale Timeline** | |
|---|---|
| Entry of Sale Procedures Order | Within fifteen (15) days of the Petition Date |
| Deadline to Serve Sale Notice and Cure Notice | Within two (2) Business Days after entry of the Sale Procedures Order |
| Cure Objection Deadline and Assignment Objection Deadline | Within ten (10) days after service of Cure Notice |
| Sale Objection Deadline | Twenty (20) days after entry of the Sale Procedures Order |
| Bid Deadline | Noon on the date that is two (2) Business |

|  | Days prior to the Auction |
|---|---|
| Deadline to Notify Qualified Bidders | Twenty-four (24) hours prior to Auction |
| Auction (date to be set, whether or not required) | March 8, 2018 |
| Notice of Successful Bidder | One (1) Business Day after Auction |
| Sale Reply Deadline | March 9, 2018 |
| Sale Hearing | No later than three (3) days after the Auction |
| Sale Closing | On or before March 31, 2018 |

5.      The Break-Up Fee is approved and the Debtors are required to pay it when and as set forth in the Stalking Horse APA, which Break-Up Fee shall survive termination of the Stalking Horse APA and shall be binding and enforceable against each Debtor and its respective estate, any trustee, examiner or other representative of the Debtors' estates.  The Break-Up Fee will constitute, pursuant to section 503 of the Bankruptcy Code, an administrative expense claim in each of the Debtors' bankruptcy estates.  The Break-Up Fee shall be payable, if applicable, without any further order of the Bankruptcy Court.

6.      Only holders of allowed valid secured claims are permitted to submit a credit bid at the Auction.  To that end, unless expressly consented to in writing by the Debtors after consultation with United Bank and the Committee in advance of the Bid Deadline, no party shall be permitted or entitled to credit bid, or attempt to credit bid, any alleged obligation of the Debtors, or any affiliate or subsidiary of the Debtors, relating to (a) any alleged fees and/or penalties, (b) alleged damages, including damages relating to or arising in connection with any prepetition activity of the Debtors, or (c) any other claim (as that term is defined in the Bankruptcy Code) that the Debtors assert constitutes, or will constitute at some point, a contingent, unliquidated or disputed claim against the Debtors or any subsidiaries or affiliates of the Debtors.  Furthermore, any credit bid must provide for (i) payment in cash at the closing of

the Break-Up Fee to the extent the Break-Up Fee is required to be paid pursuant to the Stalking Horse APA, (ii) payment in cash at closing, and/or the assumption of, unpaid administrative expense claims of the Debtors incurred from the Petition Date through and including the date on which the closing of the Sale occurs, (iii) payment in cash at the closing of the Sale of the amount required to be paid by the Debtors, if any, on account of cure costs that the Debtors believe must be paid to cure all defaults under the Assumed Contracts proposed to be assumed and assigned to the party that submitted the credit bid, and (iv) payment in cash at closing of all claims that are senior to the claims of the party that submitted the credit bid. Notwithstanding anything to the contrary in this Sale Procedures Order or the Bidding Procedures, the Debtors' rights to contest the propriety of any credit bid pursuant to sections 363(k) and 105 of the Bankruptcy Code are expressly reserved.

7.      The Debtors shall have the exclusive right, in consultation with their advisors, United Bank, and the Committee, to determine whether a bid is a Qualified Bid and shall notify Potential Bidders, and the Notice Parties (as defined in the Bidding Procedures) whether any bids have been recognized as such no later than twenty-four (24) hours prior to the Auction; *provided*, *however*, that the Stalking Horse Bidder is hereby deemed a Qualified Bidder, and the Stalking Horse APA submitted to the Debtors by the Stalking Horse Bidder and appended to the Motion as Exhibit B, is deemed a Qualified Bid, for all purposes in connection with the Bidding Procedures, the Auction, and the Sale. The Stalking Horse Bidder shall not be required to take any further action in order to participate in the Auction (if any) or, if the Stalking Horse Bidder is the Successful Bidder, to be named the Successful Bidder at the Sale Hearing.

8.      Any disputes as to the selection of a Qualified Bid shall be resolved by this Court.

9.     The Debtors are authorized to conduct an Auction if they receive one or more Qualified Bids in addition to the Stalking Horse APA.  The Auction, if necessary, shall be held at _____ (prevailing Eastern Time) on _____, 2018 at the offices of _____,     or such other location as shall be timely communicated to all Qualified Bidders.  If no other Qualifying Bid is received, no Auction shall be necessary.

10.     The Debtors shall arrange for the Auction to be transcribed by a court reporter. Each Qualified Bidder shall be required to confirm its bid on the record at the Auction and confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

11.     If the Auction is held, the Debtors shall file with the Court notice of the Successful Bid(s) and Successful Bidder(s) on or before one (1) Business Day after the Auction.

12.     The Sale Hearing shall be held on _____ at _____ (prevailing Eastern Time) before this Court, the United States Bankruptcy Court for the Southern District of West Virginia, Robert C. Byrd U.S. Courthouse, 300 Virginia Street East, Charleston, West Virginia 25301, 6th Floor, Bankruptcy Courtroom.  Any objections to the Sale must (a) be in writing, (b) state the basis of such objection with specificity, (c) conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the Southern District of West Virginia and (d) be filed with the Bankruptcy Court and served in accordance with the rules of the Bankruptcy Court upon:  (i) counsel to the Debtors, Perkins Coie LLP, 131 S. Dearborn St., Ste. 1700, Chicago, IL 60603 (Attn: Brian A. Audette (baudette@perkinscoie.com)) and Supple Law Office, PLLC, 801 Viand Street, Point Pleasant, West Virginia 25550 (Attn: Joe M. Supple (joe.supple@supplelaw.net)); (ii) counsel to the Stalking Horse Bidder, Steptoe & Johnson PLLC, 400 White Oaks Boulevard, Bridgeport, WV 26330 (Attn: Evans King (evans.king@steptoe-johnson.com)); (iii) counsel to United Bank,  Spilman Thomas & Battle,

PLLC, 310 First St., Ste. 1100, Roanoke, VA 24002 (Attn: Peter M. Pearl (ppearl@spilmanlaw.com)); (iv) counsel to the Committee, _____; and (v) the Office of the United States Trustee, 300 Virginia Street East, Room 2025, Charleston, West Virginia 25301 (Attn: Debra A. Wertman).

13.     The following forms of notice are approved: (a) the Notice of Sale Procedures, Auction Date, Objection Deadline, and Sale Hearing, in the form substantially similar to that attached to the Motion as Exhibit E (the "Sale Notice") and (b) the Notice to Counterparties to the Debtors' Executory Contracts and Unexpired Leases of Assumption, Assignment and Sale (the "Cure Notice"), in the form substantially similar to that attached to the Motion as Exhibit D.

14.     The Debtors shall, within two (2) Business Days of the entry of this Sale Procedures Order, serve a copy of the Sale Notice and this Sale Procedures Order by first class mail, postage prepaid on, as extant: (a) the Office of the United States Trustee for the Southern District of West Virginia; (b) the Office of the United States Attorney for the Southern District of West Virginia; (c) counsel to any statutory committee appointed in these cases, (d) counsel to United Bank; (e) the Internal Revenue Service; (f) counsel to the Stalking Horse Bidder; (g) all persons known by the Debtors to have expressed an interest to the Debtors in a transaction with respect to the Assets during the previous eight months; (h) all entities known by the Debtors that may have a lien, claim, encumbrance, or other interest in the Assets (for which identifying information and addresses are available to the Debtors); (i) all non-Debtor parties to the Executory Contracts and Unexpired Leases; (j) all of the Debtors' known creditors, (k) all employees and former employees receiving benefits from the Debtors; (l) the Pension Benefit Guaranty Corporation; (m) any governmental unit known to the Debtors to have a claim in these cases; (n) the Office of the Attorney General of West Virginia; (o) the Office of the West

Virginia Secretary of State; and (p) all parties that have requested notice in these cases under Bankruptcy Rule 2002.

15.     The Debtors shall, within two (2) Business Days from the entry of this Sale Procedures Order, serve the Cure Notice upon each non-Debtor counterparty to each Executory Contract and Unexpired Lease and their counsel (if known) and the United States Department of Justice, Civil Division, if the non-Debtor counterparty is a department agency or instrumentality of the United States.  The Cure Notice shall state the date, time and place of the Sale Hearing, whether such Executory Contract or Unexpired Lease is designated to be assumed and assigned to the Stalking Horse Bidder, as well as the date by which any objection to the assumption and assignment of such Executory Contract or Unexpired Lease must be filed and served.  The Cure Notice also will identify the amounts, if any, that the Debtors believe are owed to each counterparty to an Executory Contract or Unexpired Lease in order to cure any defaults that exist under such contract or lease (the "Cure Amounts") pursuant to section 365 of the Bankruptcy Code.  The Cure Notice does not constitute an admission that an Executory Contract or Unexpired Lease is in fact an executory contract or unexpired lease, and the Debtors reserve any and all rights with respect to the Executory Contracts and Unexpired Leases.

16.     If any counterparty to an Executory Contract or Unexpired Lease objects for any reason to the Cure Amounts set forth in the Cure Notice, such counterparty must file with the Court a written objection (a "Cure Amount Objection") and serve such Cure Amount Objection so as to be received by the Objection Recipients (as defined in the Cure Notice) by no later than _____ at _____ (prevailing Eastern Time) (the "Cure Objection Deadline").

17.     If, at any time after the entry of this Sale Procedures Order, the Debtors or any Qualified Bidder identify additional Executory Contracts or Unexpired Leases to be assumed and

assigned as Assumed Contracts (whether before or after the closing of the Sale), as applicable, the Debtors shall serve a supplemental Cure Notice (the "Supplemental Cure Notice") by facsimile, electronic transmission, hand delivery or overnight mail on the applicable non-debtor counterparty and its counsel (if known) and the United States Department of Justice, Civil Division, if the non-Debtor counterparty is a department agency or instrumentality of the United States, no later than ten (10) days before the proposed effective date of such proposed assignment.  Each Supplemental Cure Notice shall (a) state the date, time and place of the Sale Hearing, (b) state the date by which any objection to the assumption and assignment of such Assumed Contract must be filed and served, and (c) identify the Cure Amount.

18.     Unless the non-debtor counterparty to an Executory Contract or Unexpired Lease properly files and serves an objection to the Supplemental Cure Notice (the "Supplemental Cure Amount Objection") on or before ten (10) days after the date the Supplemental Cure Notice (the "Supplemental Cure Objection Deadline"), the Debtors shall be authorized to assume and assign the Executory Contract or Unexpired Lease, subject to the occurrence of the Closing and without further notice or order of the Court.

19.     Each Cure Amount Objection and Supplemental Cure Amount Objection must set forth with specificity each and every asserted default in any Executory Contract or Unexpired Lease and the monetary cure amount asserted by such counterparty to the extent it differs from the amount, if any, specified by the Debtors in the Cure Notice or Supplemental Cure Notice, as applicable.

20.     In the event that the Debtors and the non-debtor counterparty to an Executory Contract and/or Unexpired Lease cannot resolve the Cure Amount Objection or Supplemental Cure Amount Objection, disputed Cure Amounts ("Disputed Cure Amounts") shall not be paid

until the resolution of any such disputes by the Court or mutual agreement of the Debtors, the Successful Bidder and the objecting counterparty.  Cure Amount Objections may be resolved by the Court at the Sale Hearing, or at a separate hearing either before or after the Sale Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely file and serve a Cure Amount Objection or Supplemental Cure Amount Objection shall be forever barred from asserting that a Cure Amount is owed in an amount in excess of that set forth in the Cure Notice or Supplemental Cure Notice.  If no timely Cure Objection or Supplemental Cure Amount Objection is filed and served with respect to an Assumed Contract, the Cure Amount identified in the Cure Notice or Supplemental Cure Notice with respect to such Assumed Contract will be the only amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under such Assumed Contract if the Stalking Horse Bidder (or other Successful Bidder) ultimately decides to have the applicable Assumed Contract assumed and assigned to it.  Any party failing to timely file a Cure Amount Objection or Supplemental Cure Amount Objection shall be forever barred from objecting to the Cure Amounts and from asserting any additional cure or other amounts against the Debtors, their estates or the Successful Bidder.

21.     If an Executory Contract or Unexpired Lease is assumed and assigned pursuant to Court Order, then except for any such Assumed Contract that is subject to Disputed Cure Amounts, the Assumed Contract counterparty shall be paid the Cure Amount, if any, as set forth in the Cure Notice or Supplemental Cure Notice, as applicable, with payment to be made pursuant to the terms of the Successful Bidder's asset purchase agreement.

22.     If any counterparty to an Executory Contract or Unexpired Lease objects for any reason to the assumption and assignment of such Executory Contract or Unexpired Lease with respect to the Stalking Horse Bidder (other than a Cure Amount Objection, an "Assignment

Objection"), such counterparty must file and serve such Assignment Objection so as to be received by the Objection Recipients by no later than (the "Assignment Objection Deadline"): (a) _____ (prevailing Eastern Time) on _____; or (b) the date otherwise specified in the Cure Notice (or, alternatively, the date set forth in the motion to assume such Assumed Contract if such contract is to be assumed and assigned after the Sale Hearing); *provided*, *however*, if the Successful Bidder is not the Stalking Horse Bidder the Assignment Objection Deadline shall be one (1) day prior to the Sale Hearing.  The Court shall make any and all determinations concerning adequate assurance of future performance under the Assumed Contracts pursuant to sections 365(b) and (f)(2) of the Bankruptcy Code at the Sale Hearing.

23.     Except to the extent otherwise provided in the Successful Bidder's asset purchase agreement, the Debtors and the Debtors' estates shall be relieved of all liability accruing or arising after the assumption and assignment of the Assumed Contracts pursuant to section 365(k) of the Bankruptcy Code.

24.     Notwithstanding any provision in this Sale Procedures Order, the Stalking Horse APA or the Bidding Procedures, this Sale Procedures Order does not satisfy, and the Court has not yet determined if the Debtors have satisfied, the requirements of section 365 of the Bankruptcy Code for any particular Assumed Contract, including those relating to the cure of any existing default or providing adequate assurance of future performance.  No Assumed Contract will be deemed assumed and assigned until the later of (a) the date the Court has entered an order authorizing the assumption and assignment of a particular Assumed Contract or (b) the date the Sale is closed.  The Successful Bidder will have no rights in and to any particular Assumed Contract until such time as the particular Assumed Contract is assumed and assigned to such Successful Bidder.

13

25.     Subject to the terms of the Stalking Horse APA and the Bidding Procedures, the Debtors are authorized to take such actions as may be necessary or appropriate to implement and affect the terms and requirements of this Sale Procedures Order, including, but not limited to, expending such funds or taking such action as may be necessary or appropriate to comply with the Bidding Procedures.

26.     To the extent the provisions of this Sale Procedures Order are expressly inconsistent with the provisions of any Exhibit referenced herein, including the Bidding Procedures, or with the Motion, the provisions of this Order shall control.

27.     The Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

28.     Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable.

Dated: _____, 2018


_____
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Bidding Procedures**

# BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") for the proposed sale of all or substantially all of the assets of Daily Gazette Company, Daily Gazette Holding Company, LLC, Charleston Newspapers Holdings, L.P., Daily Gazette Publishing Company, LLC, Charleston Newspapers, and G-M Properties, Inc. (collectively, the "Debtors" or the "Sellers"), in connection with the jointly administered chapter 11 cases pending in the United States Bankruptcy Court for the Southern District of West Virginia (the "Bankruptcy Court"), lead case number 18-20028.

The Sellers entered into that certain asset purchase agreement, dated January _____, 2018 between the Sellers and _____ (the "Stalking Horse Bidder"), pursuant to which the Stalking Horse Bidder has agreed to acquire the purchased assets (the "Purchased Assets") and has agreed to assume certain specified liabilities on the terms and conditions specified therein (together with the schedules and related documents thereto, and as may be amended, supplemented or otherwise modified, the "Stalking Horse APA").

The Stalking Horse Bidder has submitted, in the form of the Stalking Horse APA, a Qualified Bid (as defined below) consisting of a cash payment equal to the sum of (a) $11,261,000 and (b) the Cure Amounts, subject to certain adjustments specified in the Stalking Horse APA.[1]

The sale transaction pursuant to the Stalking Horse APA is subject to competitive bidding as set forth herein. Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Motion for the approval of the Bidding Procedures (the "Approval Motion") [Docket No. _____].

A.    ASSETS TO BE SOLD

The Sellers seek to complete a sale of the Purchased Assets and the assumption of the Assumed Liabilities described in Article 1 of the Stalking Horse APA.  Except as otherwise provided in the Stalking Horse APA or such other approved purchase agreement of the Successful Bidder (as defined below), all of the Sellers' right, title and interest in and to each Purchased Asset to be acquired shall be sold free and clear of all liens, claims, interests, charges, restrictions and encumbrances of any kind or nature thereon and there against (collectively, the "Liens"), such Liens to attach solely to the net proceeds of the sale of such Purchased Assets.

B.    THE BID PROCEDURES

To ensure that the Sellers receive the maximum value for the Purchased Assets, the Stalking Horse APA is subject to higher or otherwise better offers, and, as such, the Stalking Horse APA will serve as the "stalking-horse" bid for the Purchased Assets.

1.      *Provisions Governing Qualifications of Bidders*

---

[1]      Capitalized terms used but not otherwise defined in this paragraph shall have the meanings ascribed to such terms in the Asset Purchase Agreement.

In order to participate in the bidding process, prior to the Bid Deadline (defined below), each person other than the Stalking Horse Bidder who wishes to participate in the bidding process (a "Potential Bidder") must deliver the following to the Notice Parties (as defined below):

> a. a written disclosure of the identity of each entity including all affiliates, equity sources or other parties that will be or is associated with bidding for the Purchased Assets or otherwise participating in connection with such bid and the complete terms of any such participation; and

> b. an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Sellers to a Potential Bidder) in form and substance satisfactory to the Sellers, in substantially the same form as signed by the Stalking Horse Bidder and which shall inure to the benefit of any purchaser of the Purchased Assets; without limiting the foregoing, each confidentiality agreement executed by a Potential Bidder shall contain standard non-solicitation provisions.

A Potential Bidder that delivers the documents and information described above and that the Sellers determine in their reasonable business judgment, after consultation with (a) their advisors, (b) United Bank, and (c) if applicable, the statutory committee appointed in these cases (the "Committee"), is likely (based on availability of committed capital, experience and other considerations) to submit a bona fide offer and be able to consummate the sale including without limitation obtaining all required regulatory or government agency approvals, will be deemed a "Qualified Bidder." The Sellers will limit access to due diligence to those parties they believe, in the exercise of their reasonable judgment, are pursuing the transaction in good faith.

As promptly as practicable after a Potential Bidder delivers all of the materials required above (and in any event no later than one (1) business day thereafter), the Sellers will determine, after consultation with United Bank and the Committee, and will notify the Potential Bidder, the Stalking Horse Bidder and the Notice Parties if such Potential Bidder is a Qualified Bidder.

2.      *Due Diligence*

All due diligence requests shall be directed to counsel to the Debtors: Perkins Coie LLP, 131 S. Dearborn St., Ste. 1700, Chicago, IL 60603 (Attn: Brian A. Audette (baudette@perkinscoie.com)).   The Debtors shall coordinate all reasonable requests for information and due diligence access from Qualified Bidders.

The Sellers will afford any Qualified Bidder with (a) an electronic copy of the Stalking Horse APA, (b) access to information in a confidential electronic data room concerning such assets of the Debtors as the Debtors may determine in consultation with United Bank and the Committee (the "Data Room"), and (c) such due diligence access or additional information as the Sellers, in consultation with their advisors, United Bank, and the Committee, deem appropriate, in their reasonable discretion, subject to contractual obligations to limit access to certain proprietary information; provided, however, the Sellers will, in their reasonable discretion, make reasonable commercial efforts to provide Qualified Bidders with the same

138116643.1

information provided to the Stalking Horse Bidder. The Sellers must promptly advise the Stalking Horse Bidder, United Bank, and the Committee in the event any other Qualified Bidder receives diligence the Stalking Horse Bidder has not previously received and shall promptly provide the Stalking Horse Bidder with access to such diligence materials.

The due diligence period shall end on the Bid Deadline, and the Sellers shall not furnish any due diligence information to any Qualified Bidder (other than the Successful Bidder) after the Bid Deadline. For the avoidance of doubt, neither the Sellers nor any of their respective representatives shall be obligated to furnish any due diligence information to any person other than a Qualified Bidder.

3.     *Provisions Governing Qualified Bids*

A bid submitted will be considered a Qualified Bid only if the bid is submitted by a Qualified Bidder and complies with all of the following (a "Qualified Bid"):

a.     it fully discloses the identity of the Qualified Bidder;

b.     it states that the applicable Qualified Bidder offers to purchase the Purchased Assets upon terms and conditions that the Sellers reasonably determine, after consultation with United Bank and the Committee, are at least as favorable to the Sellers as those set forth in the Stalking Horse APA, and it provides a description of any anticipated regulatory or governmental approvals necessary to consummate the bid;

c.     it includes a signed writing that the Qualified Bidder's offer is irrevocable until the selection of the Successful Bidder, provided that if such bidder is selected as the Successful Bidder its offer shall remain irrevocable until the earlier of (i) the closing of the sale to the Successful Bidder, and (ii) sixty (60) days after entry of the Sale Order. Such writing shall guaranty performance of the Qualified Bidder by its parent entities, if any, or provide such other guaranty of performance acceptable to Sellers in their reasonable discretion;

d.     confirmation that all necessary internal and shareholder approvals have been obtained prior to the bid;

e.     it includes a duly authorized and executed copy of an asset purchase agreement, including as applicable the purchase price for the Purchased Assets expressed in U.S. Dollars, together with all exhibits and schedules thereto, together with copies marked to show any amendments and modifications to the Stalking Horse APA (together with exhibits, schedules, and marked copies, the "Proposed Stalking Horse APA") and the proposed form of sale approval order to approve the sale by the Bankruptcy Court, together with a copy marked to show amendments and modifications to the proposed form of sale approval order attached to the Approval Motion; provided however, that such Proposed Stalking Horse APA shall not include any financing or diligence conditions;

f.     it includes written evidence of sufficient cash on hand to fund the purchase price or sources of immediately available funds that are not conditioned

- 3 -

on third party approvals or commitments, that will allow the Sellers to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the transaction contemplated by the Proposed Stalking Horse APA; such written evidence shall include the most current audited and the most current unaudited financial statements, or such other financial information as may be acceptable to the Sellers in their reasonable discretion after consultation with United Bank and the Committee (collectively, the "Financials") of the Qualified Bidder, or, if the Qualified Bidder is an entity formed for the purpose of acquiring the Purchased Assets, the Financials of the Qualified Bidder's equity holder(s) or other financial backer(s) that are guaranteeing the Qualified Bidder's performance;

g.       it provides for a purchase price that exceeds the aggregate consideration to be paid to or for the benefit of the Sellers' estates set forth in the Stalking Horse APA by at least $500,000, which represents the sum of (i) the amount of the Break-Up Fee (as defined below) of $400,000, plus (ii) $100,000, and otherwise has a value to the Sellers, in the Sellers' exercise of their reasonable business judgment, after consultation with their advisors, United Bank and the Committee, that is greater or otherwise better than the value offered under the Stalking Horse APA including impact of any liabilities assumed in the Stalking Horse APA;

h.       it is accompanied by a cash deposit in the amount of 10% of the cash purchase price of the bid (the "Deposit");

i.       it does not entitle the Qualified Bidder to any break-up fee, termination fee or similar type of payment or reimbursement and confirms that, by submitting a bid, the Qualified Bidder waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of its bid;

j.       it identifies with particularity which executory contracts and unexpired leases the Qualified Bidder wishes to assume and provides details of the Qualified Bidder's proposal for the treatment of related cure costs;

k.       it includes an acknowledgement and representation that the Qualified Bidder: (i) has had an opportunity to conduct any and all required due diligence regarding the Purchased Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Purchased Assets in making its bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Purchased Assets or the completeness of any information provided in connection therewith or with the Auction (defined below), except as expressly stated in the Proposed Stalking Horse APA; and (iv) is not entitled to any expense reimbursement, break-up fee, or similar type of payment in connection with its bid;

- 4 -

l.      it includes evidence, in form and substance reasonably satisfactory to the Sellers, of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Proposed Stalking Horse APA;

m.      it contains a detailed description of how the Qualified Bidder intends to treat current employees of the Sellers;

n.      it contains sufficient information concerning the Qualified Bidder's ability to provide adequate assurance of performance with respect to executory contracts and unexpired leases to be assumed and assigned;

o.      it states that the Qualified Bidder consents to the jurisdiction of the Bankruptcy Court;

p.      it contains such other information reasonably requested by the Sellers;

q.      it complies with all requirements of the Sale Procedures Order; and

r.      it is received, along with the Deposit, on or prior to the Bid Deadline.

Notwithstanding anything in these Bidding Procedures to the contrary, the Stalking Horse Bidder is deemed to be a Qualified Bidder, the Stalking Horse APA is deemed to constitute a Qualified Bid for all purposes in connection with the Bidding Procedures, the Auction, and the Sale, and the Stalking Horse Bidder shall not be required to take any further action in order to participate in the Auction (if any) or, if the Stalking Horse Bidder is the Successful Bidder, to be named the Successful Bidder at the Sale Hearing (as defined below).

The Sellers shall notify the Stalking Horse Bidder, all Qualified Bidders, and the Notice Parties in writing as to whether or not any bids constitute Qualified Bids (and, with respect to each Qualified Bidder that submitted a bid other than the Stalking Horse Bidder, whether such Qualified Bidder's bid constitutes a Qualified Bid) promptly after, and in any event on the same day as, the notification to any Qualified Bidder that their bid constitutes a Qualified Bid; provided, however, that such notification shall not be given later than twenty-four (24) hours prior to the Auction.

4.      *Bid Deadline*

A Qualified Bidder that desires to make a bid will deliver written copies of its bid to the following parties (collectively, the "Notice Parties"): (i) co-counsel to the Sellers: Perkins Coie LLP, 131 S. Dearborn St., Ste. 1700, Chicago, IL 60603 (Attn: Brian A. Audette (baudette@perkinscoie.com)), and Supple Law Office PLLC, 801 Viand Street, Point Pleasant, WV 25550 (Attn: Joe Supple (info@supplelaw.net)); (ii) counsel to the Stalking Horse Bidder: Steptoe & Johnson PLLC, 400 White Oaks Boulevard, Bridgeport, WV 26330 (Attn: Evans King (evans.king@steptoe-johnson.com)); (iii) counsel to United Bank: Spilman Thomas & Battle, PLLC, 310 First St., Ste. 1100, Roanoke, VA 24002 (Attn: Peter M. Pearl (ppearl@spilmanlaw.com)); and (iv) counsel to the Committee: _____; so as to be

- 5 -

received by the Notice Parties not later than 5:00 p.m. (prevailing Eastern Time) on the date that is two (2) business days prior to the Auction (the "Bid Deadline").

5.      *Evaluation of Competing Bids*

A Qualified Bid will be valued based upon several factors including, without limitation, (a) the amount of such bid (including value provided by the assumption of liabilities), (b) the risks and timing associated with consummating such bid, (c) any proposed revisions to the Stalking Horse APA (including any additional conditions to closing), and (d) any other factors deemed relevant by the Sellers in their reasonable discretion (after consultation with United Bank and the Committee).

6.      *No Qualified Bids*

If the Sellers do not receive any Qualified Bids other than the Stalking Horse APA, the Sellers will not hold an auction and the Stalking Horse Bidder will be named the Successful Bidder on the Bid Deadline.

7.      *Auction Process*

If the Sellers receive one or more Qualified Bids in addition to the Stalking Horse APA, the Sellers will conduct an auction (the "Auction") of the Purchased Assets, which shall be transcribed, at _____ (prevailing Eastern Time) on _____ at the offices of _____ _____, or such other location as shall be timely communicated to all entities entitled to attend the Auction.   The Auction shall be conducted in accordance with the following procedures:

a.      only the Sellers, the Notice Parties, the members of the Committee, United Bank representatives, the Stalking Horse Bidder, any other Qualified Bidders that have submitted Qualified Bids, and/or other party as the Sellers may determine to include in their discretion, in each case along with their representatives and advisors, shall be entitled to attend the Auction (such attendance to be in person); if a party that is a creditor of the Debtors, other than those listed above, would like to attend the Auction, such party shall make a request to attend the Auction in writing (which writing may be in the form of an electronic mail) and serve such request on the Notice Parties no later than 12:00 p.m. (prevailing Eastern Time) two (2) business days prior to the date of the Auction;

b.      only the Stalking Horse Bidder and such other Qualified Bidders that have submitted Qualified Bids on or prior to the Bid Deadline will be entitled to make any subsequent bids at the Auction; provided that all such Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person;

c.      each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

- 6 -

d.      at least one (1) business day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Sellers whether it intends to attend the Auction; provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until (i) the date of the selection of the Successful Bidder at the conclusion of the Auction, or (ii) if selected as the Successful Bidder, until (x) the closing of the sale to the Successful Bidder, and (y) sixty (60) days after entry of the Sale Order.  Prior to the start of the Auction, the Sellers will provide copies of the Qualified Bid which the Sellers believe, in their reasonable discretion, is the highest or otherwise best offer (the "Starting Bid") to the Stalking Horse Bidder and all other Qualified Bidders;

e.      all Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction and the actual identity of each Qualified Bidder will be disclosed on the record at the Auction;

f.      the Sellers, after consultation with their advisors, United Bank, and the Committee, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction, provided that such rules are (i) not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Court entered in connection herewith, and (ii) provide that bids be made and received on an open basis, with all material terms of each bid to be fully disclosed to all other Qualified Bidders at the Auction and (iii) are disclosed to each Qualified Bidder at the Auction; and

g.      bidding at the Auction will begin with the Starting Bid and continue in bidding increments (each a "Subsequent Bid") providing a net value to the estate of at least an additional $100,000.00 above the prior bid.  After the first round of bidding and between each subsequent round of bidding, the Sellers, after consultation with counsel to United Bank and the Committee, shall announce the bid (including the identity of that bidder and the value of such bid) that it believes to be the highest or otherwise best offer (the "Highest Bid").  A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Highest Bid. Each Qualified Bidder shall either elect to provide a higher bid or withdraw from the Auction.  Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by the Stalking Horse Bidder), the Sellers will give effect to the Break-Up Fee payable to the Stalking Horse Bidder under the Stalking Horse APA as well as any additional liabilities to be assumed by a Qualified Bidder and any additional costs which may be imposed on the Sellers.  If the Stalking Horse Bidder bids at the Auction, the Stalking Horse Bidder will be entitled to a "credit" for the Break-Up Fee.  To the extent a Subsequent Bid has been accepted entirely or in part because of the addition, deletion or modification of a provision or provisions in the applicable Proposed Stalking Horse APA or the Stalking Horse

- 7 -

APA, the Sellers will identify such added, deleted or modified provision or provisions.

8.      *Selection of Successful Bid*

Prior to the conclusion of the Auction, the Sellers, in consultation with their advisors, United Bank and the Committee, will review and evaluate each Qualified Bid in accordance with the procedures set forth herein and determine which offer is the highest or otherwise best offer from among the Qualified Bidders (including the Stalking Horse Bidder) submitted at or prior to the Auction by a Qualified Bidder (such bid, the "Successful Bid" and the bidder making such bid, the "Successful Bidder") and communicate to the Stalking Horse Bidder and the other Qualified Bidders the identity of the Successful Bidder and the details of the Successful Bid.  The determination of the Successful Bid by the Sellers at the conclusion of the Auction shall be final, subject only to approval by the Bankruptcy Court.

Within two (2) business days after adjournment of the Auction, the Successful Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.  Within one (1) business day after adjournment of the Auction, the Sellers shall file a notice identifying the Successful Bidder with the Bankruptcy Court.

The Sellers will sell the Purchased Assets to the Successful Bidder pursuant to the terms of the Successful Bid upon the approval of such Successful Bid by the Bankruptcy Court at the Sale Hearing.

C.      <u>THE BID PROTECTIONS</u>

In recognition of the expenditure of time, energy, and resources, and because the agreement to make payment thereof is necessary to preserve the value of the Sellers' estates, the Sellers have agreed that, among other triggering events, if the Stalking Horse Bidder is not the Successful Bidder, the Sellers will pay the Stalking Horse Bidder an aggregate fee of $_____ as more fully described in the Stalking Horse APA (the "Break-Up Fee").  The Break-Up Fee shall be payable from the net sale proceeds and as otherwise provided for pursuant to the terms of the Stalking Horse APA, and nothing herein shall be deemed to limit or otherwise modify the terms thereof, including other circumstances pursuant to which the Breakup-Up Fee may be payable.

D.      <u>SALE HEARING</u>

The Sellers will seek entry of an order from the Bankruptcy Court at a hearing (the "Sale Hearing") to begin at _____ (prevailing Eastern Time) on _____, 2018 to approve and authorize the sale transaction to the Successful Bidder on terms and conditions determined in accordance with the Bidding Procedures.

E.      <u>MISCELLANEOUS</u>

The Auction and the Bidding Procedures are solely for the benefit of the Sellers and the Stalking Horse Bidder, and nothing contained in the Sale Procedures Order or the Stalking Horse APA or the Bidding Procedures shall create any rights in any other person or bidder (including

- 8 -

without limitation rights as third party beneficiaries or otherwise) other than the rights expressly granted to a Successful Bidder under the Sale Procedures Order.

In the event the Stalking Horse Bidder is not the Successful Bidder, the Stalking Horse Bidder shall have standing to object to the sale of the Purchased Assets or any portion thereof at the Sale Hearing to the extent such objection is related to the terms of the Stalking Horse APA (including the failure to adhere to such terms) or the conduct of the Auction and interpretation of these bidding procedures.

The Sellers, after consultation with United Bank and the Committee, if any, may modify the rules, procedures and deadlines set forth herein, or adopt new rules, procedures and deadlines that, in their reasonable discretion, will better promote the goals of these procedures, namely, to maximize value for the estates; provided, however, that all modifications and additional rules, procedures and deadlines will be non-material, may in no event extend the dates specified in Sale Procedures Order, including permitting the submission of Qualified Bids after the close of the Auction and otherwise not conflict with these Bidding Procedures or the Sale Procedures Order. All such modifications and additional rules will be communicated to each of the Notice Parties, Potential Bidders and Qualified Bidders.

The Bankruptcy Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of the Sale Procedures Order.

DATED: _____, 2018               **SUPPLE LAW OFFICE, PLLC**

By: */s/ Joe M. Supple*_____
  Joe M. Supple, Bar. No. 8013
  801 Viand St.
  Point Pleasant, WV 25550
  Telephone: 304.675.6249
  Facsimile: 304.675.4372
  joe.supple@supplelaw.net

  - and -

  Brian A. Audette, Ill. Bar No. 6277056
  PERKINS COIE LLP
  131 S. Dearborn St., Suite 1700
  Chicago, IL 60603
  Telephone: 312.324.8534
  Facsimile: 312.324.9534
  baudette@perkinscoie.com

*Proposed Co-Counsel to the Debtors and Debtors-in-Possession*

138116643.1