## **Exhibit C**

**Sale Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Daily Gazette Company, *et al.*, | ) | Case No. 18-20028 |
| | ) | |
| Debtors. [1] | ) | (Joint Administration Requested) |

**ORDER (A) AUTHORIZING THE SALE OF SUBSTANTIALLY
ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
ENCUMBRANCES, AND OTHER INTERESTS, (B) AUTHORIZING AND
APPROVING THE DEBTORS' PERFORMANCE UNDER THE ASSET PURCHASE
AGREEMENT, (C) APPROVING THE ASSUMPTION AND ASSIGNMENT OF
CERTAIN OF THE DEBTORS' EXECUTORY CONTRACTS AND UNEXPIRED
LEASES RELATED THERETO, AND (D) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (the "Debtors") for the entry of orders, pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "Bankruptcy Rules"), and Rules 6004-1 and 9013-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of West Virginia (the "Local Rules"): (I) (A) approving and authorizing bidding procedures in connection with the sale of substantially all of the Debtors' assets (the "Bidding Procedures"), (B) approving and authorizing a Break-Up Fee, (C) scheduling the related auction and hearing to consider approval such sale, (D) approving procedures related to the assumption and assignment of certain executory contracts and

---

[1]     The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's taxpayer identification number are as follows: Daily Gazette Company (4480); Daily Gazette Holding Company, LLC (2981); Charleston Newspapers Holdings, L.P. (3028), Daily Gazette Publishing Company, LLC (3074),Charleston Newspapers (6079), and G-M Properties, Inc. (4124).  The Debtors' headquarters are located at 1001 Virginia St. E, Charleston, West Virginia 25301.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the APA (as defined below).

unexpired leases, (E) approving the form and manner of notice thereof; and (F) granting related relief (collectively, the "Bidding Procedures Relief"); and (II) (A) authorizing the sale of substantially all of the Debtors' assets free and clear of liens, claims, encumbrances, and other interests, (B) authorizing and approving the Debtors' performance under an asset purchase agreement, (C) approving the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases related thereto, and (D) granting related relief; the Court having entered an order granting the Bidding Procedures Relief, approving the Bidding Procedures and granting certain related relief on _____, 2018 [Dkt. #__] (the "Sale Procedures Order"); and an auction (the "Auction") having been held on _____, 2018 in accordance with the Sale Procedures Order; and _____ (the "Buyer") having been deemed the Successful Bidder (as defined in the Bidding Procedures) by the Debtors pursuant to the Sale Procedures Order; and the Court having conducted a hearing on the Motion on _____, 2018 (the "Sale Hearing") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered the Motion, declarations and other evidence submitted in support thereof, and the Asset Purchase Agreement, dated as of _____, 2018 by and among the Debtors and the Buyer (as amended, supplemented or otherwise modified, together with all exhibits and annexes thereto, the "APA");[3] and the Court having heard statements of counsel and any evidence presented in support of the relief requested in the Motion at the Sale Hearing; and due notice of the Motion, the Asset Purchase Agreement, the Sale Procedures Order and the Auction having been provided; and having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their stakeholders and all other parties in interest; and the Court having jurisdiction over this matter;

---

[3]        A true and correct copy of the APA is attached hereto as Exhibit 1.

and the legal and factual bases set forth in the Motion and at the Sale Hearing establishing just

cause for the relief granted herein; and after due deliberation thereon,

**THE COURT HEREBY FINDS AND DETERMINES THAT**:

## I.      Jurisdiction, Final Order and Statutory Predicates

A.      The Court has jurisdiction to hear and determine the Motion pursuant to

28 U.S.C. §§ 157(b)(1) and 1334(a).    This is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2)(A), (N) and (O).    Venue is proper in this District and in the Court pursuant to 28

U.S.C. §§ 1408 and 1409.

B.      This order (the "Sale Order") constitutes a final and appealable order

within the meaning of 28 U.S.C. § 158(a).    Notwithstanding Bankruptcy Rules 6004(h) and

6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal

Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly

finds that there is no just reason for delay in the implementation of this Sale Order, and expressly

directs entry of judgment as set forth herein.

C.      The statutory predicates for the relief requested in the Motion are sections

105(a), 363(b), (f), and (m), and 365 of the Bankruptcy Code, Bankruptcy Rules 2002(a)(2),

6004(a), (b), (c), (e), (f) and (h), 6006(a), (c) and (d), 9007 and 9014, and Local Rules 6004-1

and 9013-1.

D.      The findings of fact and conclusions of law set forth herein constitute the

Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made

applicable to this proceeding pursuant to Bankruptcy Rule 9014.

E.      To the extent any of the following findings of fact constitute conclusions

of law, they are hereby adopted as such.    To the extent any of the following conclusions of law

constitute findings of fact, they are hereby adopted as such.    Any findings of fact or conclusions

of law stated by the Court on the record at the Sale Hearing are hereby incorporated, to the extent they are not inconsistent herewith.

       F.      The Buyer has and will be acting in good faith pursuant to section 363(m) of the Bankruptcy Code in closing the transaction contemplated by the APA (the "<u>Sale</u>").

## II.      Notice of the Sale, Auction and the Cure Amounts

       A.      Actual written notice of the Sale Hearing, the Auction, the Motion, the Sale, the assumption, assignment and sale of the executory contracts and unexpired leases to be assumed by the Debtors and assigned to the Buyer pursuant to APA (which are identified on <u>Exhibit 2</u> of this Sale Order; such executory contracts and such unexpired leases, the "<u>Assumed Contracts</u>") provided a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all known interested persons and entities, including, but not limited to the following parties (the "<u>Notice Parties</u>"):  (1) the Office of the United States Trustee for the Southern District of West Virginia; (2) the Office of the United States Attorney for the Southern District of West Virginia; (3) counsel to any statutory committee appointed in the above-captioned jointly administered chapter 11 cases (together, the "<u>Chapter 11 Cases</u>"), (4) counsel to United Bank; (5) the Internal Revenue Service; (6) counsel to the Stalking Horse Bidder; (7) all persons known by the Debtors to have expressed an interest to the Debtors in a transaction with respect to the Debtors' assets during the previous eight months; (8) all entities known by the Debtors that may have a lien, claim, encumbrance, or other interest in the Debtors' assets (for which identifying information and addresses are available to the Debtors); (9) all non-Debtor parties to the Assumed Contracts (collectively, the "<u>Contract Counterparties</u>"); (10) all of the Debtors' known creditors, (11) all employees and former employees receiving benefits from the Debtors; (12) the Pension Benefit Guaranty Corporation; (13) any governmental unit known to the Debtors to have a claim in these cases; (14) the Office

of the Attorney General of West Virginia; (15) the Office of the West Virginia Secretary of

State; and (16) all parties that have requested notice in these cases under Bankruptcy Rule 2002.

B.      In accordance with the provisions of the Sale Procedures Order, the

Debtors have served the Cure Notice and any Supplemental Cure Notice (each as defined in the

Sale Procedures Order) upon the Buyer and the Contract Counterparties notifying them:  (1) that

the Debtors seek to assume and assign the Assumed Contracts on the Closing Date; and (ii) of

the relevant cure amounts required to be paid in connection with the assumption and assignment

of the Assumed Contracts.  Pursuant to Bankruptcy Rule 6006(c), the Court finds that the service

of such Cure Notice was good, sufficient and appropriate under the circumstances and no further

notice need be given in respect of establishing a cure amount for the Assumed Contracts.  Buyer

and the Contract Counterparties have had an opportunity to object to the cure amounts set forth

in the Cure Notice.

C.      The Debtors' Sale Notice (as defined in the Sale Procedures Order)

provided all interested parties with timely and proper notice of the Sale, the Sale Hearing and the

Auction.

D.      The Cure Notice provided Buyer and the Contract Counterparties with

proper notice of the potential assumption and assignment of the Assumed Contracts and any cure

amount relating thereto, and the procedures set forth therein with regard to any such cure amount

to satisfy the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

E.      As evidenced by the affidavits of service previously filed with the Court,

proper, timely, adequate, and sufficient notice of the Motion, the Auction, the Sale Hearing, and

the Sale has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy

Code and Bankruptcy Rules 2002, 6004, 6006 and 9014.  The Debtors also have complied with

all obligations to provide notice of the Auction, the Sale Hearing, and the Sale required by the Sale Procedures Order.  The notices described in paragraphs A to E of this Section II were good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale Hearing, the Sale, or the assumption, assignment and sale of the Assumed Contracts is required.

F.      The disclosures made by the Debtors concerning the Motion, the APA, the Auction, the Sale, and the Sale Hearing were good, complete and adequate.

## III.      Good Faith of Buyer

A.      The Buyer is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

B.      The Buyer is purchasing the Purchased Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*:  (a) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets following and pursuant to the terms of the Sale Procedures Order, the Bidding Procedures and the APA; (b) the Buyer complied with all provisions in the Sale Procedures Order; (c) the Buyer agreed to subject its bid to the competitive bidding procedures set forth in the Sale Procedures Order; (d) all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed; (e) the Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (f) no common identity of directors or controlling stockholders exists between the Buyer and any of the Debtors; (g) the Buyer in no way caused the Chapter 11 Cases; and (h) the negotiation and execution of the APA and any other agreements or instruments related thereto was at arms' length and in good faith.

- 6 -

IV.    **Highest and Best Offer**

A.    Prior to selecting the Buyer as the Stalking Horse Bidder, the Debtors solicited offers to acquire the Purchased Assets from a wide variety of parties.  In addition to such solicitations, the Debtors also conducted the bid and auction process in accordance with the provisions of the Sale Procedures Order and the Debtors have otherwise complied with the Sale Procedures Order in all material respects.  The bid and auction process conducted pursuant to the Sale Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Purchased Assets.  Such process was duly noticed and conducted in a non-collusive, fair and good faith manner and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Purchased Assets.

B.    The consideration provided by Buyer under the APA, including the assumption of the Assumed Liabilities and payment of the Non-Competition Payments, constitutes the highest or best offer for the Purchased Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.  The Debtors' determination that the APA constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' and their officers' and directors' business judgment consistent with their respective fiduciary duties.

C.    The APA represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of these Chapter 11 Cases.  No other person or entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Debtors' estate than the Buyer.

- 7 -

D.      Approval of the Motion and the APA and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their creditors, their estates and other parties in interest.

E.      The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale prior to, and outside of, a plan of reorganization.

**V.      No Fraudulent Transfer; No Successor Liability**

A.      The APA was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia (including, without limitation, the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act).  The consideration provided by the Buyer pursuant to the APA is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia (including, without limitation, the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act).

B.      By virtue of the consummation of the Sale, (1) the Buyer is not a continuation of the Debtors or their respective estates, there is no continuity between the Buyer and the Debtors, there is no common identity between the Debtors and the Buyer, there is no continuity of enterprise between the Debtors and the Buyer, and the Buyer is not a mere continuation of the Debtors or their estates, (2) the Buyer is not holding itself out to the public as a continuation of the Debtors or their respective estates, and (3) the Sale does not amount to a consolidation, merger or de facto consolidation or merger of the Buyer and the Debtors and/or the Debtors' estates.  Accordingly, the Buyer is not and shall not be deemed a successor to the

- 8 -

Debtors, for any purpose or under any theory, as a result of the consummation of the Sale contemplated by the APA.

C.     Notwithstanding the foregoing, no employee of the Debtors as of the Closing who becomes an employee of the Buyer immediately following the Closing may be considered to have experienced an employment loss for purposes of any statute or contract requiring prior notice and/or payment of severance benefits in the event of employment loss.

## VI.     Validity of Transfer

A.     The Debtors and the Buyer have full corporate power and authority to execute and deliver the APA and all other documents contemplated thereby, and no further consents or approvals are required for the Debtors or the Buyer to consummate the transactions contemplated by the APA, except as otherwise set forth in the APA.

B.     The Purchased Assets constitute property of the Debtors' estates and title thereto is presently vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  The transfer of each of the Purchased Assets to the Buyer will be as of the Closing Date a legal, valid, and effective transfer of such assets, and vests or will vest the Buyer with all right, title, and interest of the Debtors to the Purchased Assets free and clear of (a) all Liens, (b) all claims, including, without limitation, all "claims" within the meaning of sections 101(5) and 102(2) of the Bankruptcy Code and all interests, encumbrances, rights of setoff, recoupment, netting and deductions (collectively, "Claims"), (c) all liabilities, whether imposed by agreement, understanding, law, equity or otherwise and whether known or unknown, fixed or contingent or arising prior to or subsequent to the commencement of the Chapter 11 Cases, and (d) the Joint Operating Agreement (each of the foregoing described in clauses (a), (b), (c) and (d) collectively or individually, the "Adverse Interests"), except for any Permitted Liens and Assumed Liabilities.

- 9 -

**VII.    Section 363(f) Is Satisfied**

A.    The Buyer would not have entered into the APA and would not consummate the transactions contemplated thereby (by paying the cash payment and the other payments contemplated by the APA and assuming the Assumed Liabilities) if the sale of the Purchased Assets to the Buyer, and the assumption, assignment and sale of the Assumed Contracts to the Buyer, were not, except as otherwise provided in the APA with respect to the Assumed Liabilities and Permitted Liens, free and clear of all Adverse Interests of any kind or nature whatsoever, or if the Buyer would, or in the future could be liable for any of such Adverse Interests, including, but not limited to, Adverse Interests in respect of the following:  (1) all mortgages, deeds of trust and security interests; (2) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Debtor; (3) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (l) any other state or federal benefits or claims relating to any employment with any of the Debtors or any of their respective predecessors; (4) any bulk sales or similar law; (5) any tax statutes or ordinances, including, without limitation, the Internal

Revenue Code of 1986, as amended; (6) any environmental law(s); and (7) any theories of successor or transferee liability.

B.    The Debtors may sell the Purchased Assets free and clear of all Adverse Interests against the Debtors, their estates or any of the Purchased Assets (except for any Assumed Liabilities and Permitted Liens under the APA) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Adverse Interests against or in the Debtors, their estates or any of the Purchased Assets who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such Adverse Interests who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Adverse Interests, if any, in each instance against the Debtors, their estates or any of the Purchased Assets, attach to the net cash proceeds of the Sale ultimately attributable to the Purchased Assets in which such creditor or interest holder alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor or interest holder had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

## VIII.   Assumption and Assignment of the Assumed Contracts

A.    The assumption and assignment of the Assumed Contracts pursuant to the terms of this Sale Order is integral to the APA and is in the best interests of the Debtors and their estates, creditors, interest holders and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

B.    The amounts set forth on Exhibit 2 annexed hereto are the sole amounts necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure

all monetary defaults and pay all actual pecuniary losses under the Assumed Contracts (collectively, the "Cure Amounts").

C.       Pursuant to the terms of the APA, the Buyer and/or the Debtors have: (1) cured and/or provided adequate assurance of cure of any defaults existing prior to the Closing Date under any of the Assumed Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; and (2) provided compensation or adequate assurance of compensation to any party for actual pecuniary loss to such party resulting from a default prior to the Closing Date under any of the Assumed Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, Buyer provided adequate assurance of its future performance under the relevant Assumed Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

D.       No default exists in the Debtors' performance under the Assumed Contracts as of the Closing Date other than the failure to pay Cure Amounts or defaults that are not required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code.

## IX.    Compelling Circumstances for an Immediate Sale

A.       To maximize the value of the Debtors' assets, it is essential that the Sale of the Purchased Assets occur within the time constraints set forth in the APA.   The consummation of the Sale is necessary both to preserve and maximize the value of the Debtors' assets for the benefit of the Debtors, their estates, their creditors, interest holders and all other parties in interest in the Chapter 11 Cases, and to provide the means for the Debtors to maximize creditor recoveries.

B.       The consummation of the transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation,

- 12 -

sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f), and all of the applicable requirements of such sections have been complied with in respect of the transaction.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**General Provisions**

1.      The relief requested in the Motion is granted and approved, and the Sale contemplated thereby and by the APA is approved as set forth in this Sale Order.

2.      This Court's findings of fact and conclusions of law, set forth in the Sale Procedures Order, are incorporated herein by reference.

3.      All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby overruled on the merits or the interests of such objections have been otherwise satisfied or adequately provided for.

**Approval of the APA**

4.      The APA and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved as set forth herein.

5.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale of each of the Purchased Assets to the Buyer pursuant to and in accordance with the terms and conditions of the APA, (b) close the Sale as contemplated in the APA and this Sale Order, and (c) execute and deliver, perform under, consummate, implement and close fully the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and the Sale, including any other ancillary documents, or as

- 13 -

may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the APA and such other ancillary documents.

6.       This Sale Order shall be binding in all respects upon the Debtors, including the Debtors' estates, all holders of equity interests in any Debtor, all holders of any Claim(s) (whether known or unknown) against any Debtor, any holders of Adverse Interests against or on all or any portion of the Purchased Assets, all Contract Counterparties, the Buyer and all successors and assigns of the Buyer, the Purchased Assets and any trustees, if any, subsequently appointed in any of the Debtors' Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' Chapter 11 Cases.  This Sale Order and the APA shall inure to the benefit of the Debtors, their estates, their creditors, the Buyer and their respective successors and assigns.

7.       Any amounts payable by the Debtors under the APA or any of the documents delivered by the Debtors in connection with the APA, including without limitation, any allowed claims for breach thereof and the purchase price adjustment amount, if any, shall be paid in the manner provided in the APA without further order of the Bankruptcy Court, shall be an allowed administrative claim in an amount equal to such payments in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code with priority over any and all administrative expense claims other than (a) superpriority claims granted pursuant to any debtor-in-possession financing order to the provider of such debtor-in-possession financing and (b) administrative expense claims included within the "Carve- Out" in any debtor-in-possession financing order to which the any debtor-in-possession financing provider's claims are subject, and such claims shall not be discharged, modified or otherwise affected by any reorganization plan for the Debtors, except by

written agreement with the Buyer or its successors or assigns (such agreement to be provided in the Buyer's or its successors' or assigns' respective sole discretion).

**<u>Transfer of the Purchased Assets</u>**

8.      Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Purchased Assets on the Closing Date.  Such Purchased Assets shall be transferred to the Buyer upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of such Purchased Assets and shall be free and clear of all Adverse Interests, except Assumed Liabilities and Permitted Liens under the APA.  Upon the Closing, the Buyer shall take title to and possession of the Purchased Assets subject only to the Assumed Liabilities and Permitted Liens.  Pursuant to section 363(f) of the Bankruptcy Code, the transfer of title to the Purchased Assets and the Assumed Contracts shall, except for Assumed Liabilities and Permitted Liens, be free and clear of all Adverse Interests; including, without limitation, any and all claims relating to the Debtors' pension plans, severance obligations, employee benefit plans, and other employee related liabilities of the Debtors, based on any theory, including without limitations any successor or successor-in-interest liability theory.  Adverse Interests shall attach solely to the net cash proceeds of the Sale with the same validity, priority, force and effect that they now have as against the Purchased Assets, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.  On the Closing Date, contemporaneously with the transfer of the Purchased Assets to the Buyer, the Debtors will cause the indefeasible payment in full of all obligations due and owing to any provider of debtor-in-possession financing under any such applicable debtor-in-possession financing order from the proceeds of the Sale.

9.      Except as expressly provided by the APA with respect to Assumed Liabilities and Permitted Liens, all persons and entities holding Adverse Interests in all or any portion of the Purchased Assets arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' business prior to the Closing Date or the transfer of the Purchased Assets to the Buyer, hereby are forever barred, estopped and permanently enjoined from asserting against the Buyer or its successors or assigns, their property or the Purchased Assets, such persons' or entities' Adverse Interests in and to the Purchased Assets.  On the Closing Date, each creditor (and, the Buyer, on behalf of each creditor) is authorized to execute such documents and take all other actions as may be deemed by the Buyer to be necessary or desirable to release Liens or Claims on the Purchased Assets, if any, as provided for herein, as such Liens or Claims may have been recorded or may otherwise exist.

10.     All persons and entities that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the Buyer or its assignee as of the Closing Date.

11.     A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any of applicable Adverse Interests and encumbrances of record.

12.     If any person or entity which has filed statements or other documents or agreements evidencing Adverse Interests in, all or any portion of the Purchased Assets shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary or desirable to the Buyer for the purpose of documenting the release of all Adverse Interests (other than Assumed Liabilities or Permitted

- 16 -

Liens), which the person or entity has or may assert with respect to all or any portion of the Purchased Assets, the Buyer and the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets.

13.     This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

**Assumed and Rejected Contracts**

14.     Upon the Closing of the Sale, the Debtors are authorized and directed to assume and assign the Assumed Contracts to the Buyer free and clear of all Adverse Interests, as described herein.  The payment of the applicable Cure Amounts (if any) by the Buyer or the Debtors, as applicable and as required by the APA, shall (a) effect a cure of all defaults existing thereunder as of the Closing Date, (b) compensate for any actual pecuniary loss to such Contract Counterparties resulting from such default, and (c) together with the assignment by the Debtors to and the assumption of the Assumed Contracts by the Buyer, constitute adequate assurance of future performance thereof.  The Debtors shall then have assumed the Assumed Contracts and

- 17 -

shall have assigned the Assumed Contracts to Buyer. Pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtors of the Assumed Contracts shall not be a default thereunder. After the payment of the relevant Cure Amounts by the Buyer or Debtors, as applicable and as required by the APA, neither the Debtors nor the Buyer shall have any further liabilities to the Contract Counterparties other than the Buyer's obligations under the Assumed Contracts that accrue and become due and payable on or after the Closing Date.

15.     Any provisions in any Assumed Contract that prohibits or conditions the assignment of such Assumed Contract or allows the party to such Assumed Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Assumed Contracts have been satisfied. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assumed Contracts.

16.     Upon the Closing and the payment of the relevant Cure Amounts, if any, the Buyer shall be deemed to be substituted for the Debtors as a party to the applicable Assumed Contracts and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assumed Contracts.

17.     Upon the payment of the applicable Cure Amounts, if any, the Assumed Contracts will remain in full force and effect, and no default shall exist under the Assumed Contracts nor

shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

18.     There shall be no rent accelerations, assignment fees, increases (including advertising rates) or any other fees charged to Buyer or the Debtors as a result of the assumption and assignment of the Assumed Contracts.

19.     Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all Contract Counterparties are forever barred and permanently enjoined from raising or asserting against the Buyer any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts existing as of the Closing Date or arising by reason of the Closing.

**<u>Other Provisions</u>**

20.     Effective upon the Closing Date and except as otherwise provided by stipulations filed with or announced to the Court with respect to a specific matter or as set forth in the APA with respect to Permitted Liens and Assumed Liabilities, all persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Buyer, its successors and assigns, or the Purchased Assets, with respect to any (a) Adverse Interests arising under, out of, in connection with or in any way relating to the Debtors, the Buyer, the Purchased Assets, or the operation of the Purchased Assets prior to the Closing of the Sale, or (b) successor liability, including, without limitation, the following actions:  (i) commencing or continuing in any manner any action or other proceeding against the Buyer, its successors or assigns, assets or properties; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Buyer, its successors

LEGAL138302302.1

or assigns, assets or properties; (iii) creating, perfecting or enforcing any Adverse Interests against the Buyer, its successors or assigns, assets or properties; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Buyer or its successors or assigns; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets.

21.      Except for the Assumed Liabilities, Permitted Liens or as otherwise expressly set forth in the APA, the Buyer shall not have any liability or other obligation of the Debtors arising under or related to any of the Purchased Assets or the APA or the transactions related thereto. Without limiting the generality of the foregoing, and except for the Assumed Liabilities or Permitted Liens provided in the APA, the Buyer shall not be liable for any Claims or any other Adverse Interests against the Debtors or any of its predecessors or affiliates, and the Buyer shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Purchased Assets prior to the Closing.  The Buyer has given substantial consideration under the APA for the benefit of the holders of any Adverse Interests.  The consideration given by the Buyer shall constitute valid and valuable

consideration for the releases of any potential claims of successor liability of the Buyer, which releases shall be deemed to have been given in favor of the Buyer by all holders of Adverse Interests against or interests in the Debtors or any of the Purchased Assets.

22.     The transactions contemplated by the APA are undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assumed Contracts), unless such authorization and such Sale are duly stayed pending such appeal.  The Buyer is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

23.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these Chapter 11 Cases, (b) any subsequent chapter 7 case into which any such Chapter 11 Case may be converted, or (c) any related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the provisions of the APA or the terms of this Sale Order.

24.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

25.     The failure specifically to include any particular provision of the APA in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.

- 21 -

26.    The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court.

27.    The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

28.    Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable.

29.    All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

30.    To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Sale Order shall govern.

Dated: _____

_____
United States Bankruptcy Judge

LEGAL138302302.1

# **EXHIBIT 1**

## **APA**

(To be attached)

## **EXHIBIT 2**

**Cure Amounts**

(To be attached)