# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Daily Gazette Company, *et al.*, | ) | Case No. 18-20028 |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |

## DEBTORS' MOTION TO REJECT JOINT OPERATING AGREEMENT

Daily Gazette Company, and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), hereby move (this "Motion") this Court, pursuant to section 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1(c) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of West Virginia (the "Local Rules"), for entry of an order authorizing the Debtors' rejection of that certain Second Amended and Restated Joint Operating Agreement by and among the Debtors and Charleston Publishing Company, dated as of July 23, 2010 (the "JOA"),[2] and respectfully state as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding under 28 U.S.C. § 157(b), and the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent it is later

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's taxpayer identification number are as follows: Daily Gazette Company (4480); Daily Gazette Holding Company, LLC (2981); Charleston Newspapers Holdings, L.P. (3028); Daily Gazette Publishing Company, LLC (3074); Charleston Newspapers (6079); and G-M Properties, Inc. (4124). The Debtors' headquarters are located at 1001 Virginia St. E, Charleston, West Virginia 25301.

[2] A copy of the JOA is attached hereto as Exhibit A.

1

determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are section 365 of the Bankruptcy Code, Bankruptcy Rule 6006 and Local Rule 9013-1(c).

## BACKGROUND

**A.    Facts And Circumstances Surrounding The Parties' Entry Into The JOA**

5. The Debtors, headquartered in Charleston, West Virginia, collectively operate privately owned information and entertainment businesses consisting of the flagship newspaper, The Charleston Gazette-Mail, as well as a related website, weekly publications, a saturation mail product and the following verticals: www.wvcarfinder.com; www.wvrealestatefinder.com; www.wvjobfinder.com; and www.gazettemailclassifieds.com. The Charleston Gazette-Mail resulted from the 2015 consolidation of the Charleston Gazette and the Charleston Daily Mail—two newspapers with roots tracing back to the late 1800's.

6. In 1958, Debtor Daily Gazette Company ("Daily Gazette") (the owner of the Charleston Gazette at the time) and Clay Communications (the owner of the Daily Mail at the time) entered into a joint operating agreement, which enabled the two newspapers to share circulation, advertising, accounting and production responsibilities while at the same time retaining their own separate news and editorial identities. The joint venture was originally known as the Charleston Newspapers Agency, but after the enactment in 1970 of The Newspaper Preservation Act, 15 U.S.C. §§ 1801, *et seq.* (the "Act"), it changed its name to Charleston Newspapers, which is one of the Debtors herein.

7. In 1998, MediaNews Group, Inc. ("MediaNews Group") acquired the Daily Mail. In 2003, Daily Gazette exercised a right of first refusal to acquire the Daily Mail from

MediaNews Group. However, in an effort to appease the Department of Justice ("DOJ") regarding its antitrust concerns, the parties agreed to structure the transaction such that: (a) Daily Gazette would acquire MediaNews Group's economic interest in the joint venture—Charleston Newspapers; (b) MediaNews Group would contribute all of the Daily Mail assets to Charleston Newspapers; and (c) MediaNews Group would retain a reversionary interest in the assets contributed to Charleston Newspapers, including the rights to the web-site "dailymail.com." Further, a key to the parties' compliance with the Act included an agreement that MediaNews Group would retain sole responsibility for the editorial content of the Daily Mail and receive in exchange a management fee of $200,000 *per annum*.

8. On May 7, 2004, the parties memorialized their transaction (the "2004 Transaction") pursuant to the terms and conditions of a Master Restructuring and Purchase Agreement by and among Daily Gazette, MediaNews Group, an affiliate of MediaNews Group, Charleston Publishing Company ("CPC"), and Charleston Newspapers. In connection therewith, Debtor Charleston Newspapers Holdings, L.P. ("CNH") was formed to manage the business and affairs of Charleston Newspapers, Daily Gazette formed Debtor Daily Gazette Holding Company, LLC ("DGHC") to serve as the General Partner of CNH, and the parties entered into a revised joint operating agreement.

9. Notwithstanding the parties' best efforts to comply with the Act, in May, 2007, the DOJ commenced a lawsuit challenging the 2004 Transaction under antitrust laws. The lawsuit lingered for years until the entry of a Consent Decree on July 19, 2010. As a result of the Consent Decree, on July 23, 2010, among other things, the Debtors and CPC entered into the JOA.

**B.    Pertinent Provisions Of The JOA**

10.    Under the JOA, CPC retained its reversionary interest in certain Daily Mail assets contributed to Charleston Newspapers, which CNH was obligated to distribute to CPC upon termination of the JOA, but only after "the prior satisfaction of the claims of all creditors." *See* JOA at § VI.B.  In addition, CPC agreed to produce the Daily Mail's editorial and news content, and DGHC agreed to produce the Charleston Gazette's editorial and news content.  *See id*. at § V.B.  Similarly, DGHC and CPC were obligated to furnish complete news and editorial services necessary and appropriate for the publication of their respective newspapers, including, among other things, (a) having complete and exclusive control over the editorial departments and editorial policies of the respective newspapers, (b) providing editorial products for their newspapers compatible with the needs of the Charleston, West Virginia area newspaper market, (c) developing standards for determining the acceptability of advertising copy for publication, and (d) bearing certain of their own respective "Editorial Expenses."  *See id*. at § V.H.  In addition, CPC was entitled to a yearly management fee in exchange for its services in the management and supervision of the news and editorial operations of the Daily Mail, which fee was initially set at $225,000 per year, but subject to certain adjustments thereafter.  *See id*. at § V.J(4).

**C.    Sale Of DailyMail.com, Combination Of Newspapers And Litigation With MediaNews Group And CPC**

11.    In December, 2013, in an effort to raise much needed funds for the joint venture Charleston Newspapers, DGHC sold "dailymail.com" to Associated Newspapers Limited—the publisher of the Daily Mail newspaper in the United Kingdom—for approximately $1.5 million, which funds were partially used to reduce Charleston Newspapers' secured debt, with the

4

balance being invested in Charleston Newspapers and used to pay certain overdue management fees to CPC.

12.     Operating pursuant to the Consent decree and maintaining two separate newsrooms and publishing two competing newspapers proved costly and inefficient for Charleston Newspapers.  Accordingly, after notifying CPC and the DOJ of their intentions, on July 20, 2015—one day after the expiration of the Consent Decree—Charleston Newspapers publicly announced that the Charleston Gazette and the Daily Mail were combining newsroom functions and merging the newsroom and editorial staffs of the two newspapers to form a single newspaper, the Charleston Gazette-Mail.  The consolidation essentially nullified any obligation on the part of CPC under the JOA to control all of the editorial content of the Daily Mail; likewise, negating any basis for the payment of a yearly $225,000 management fee to CPC.  Put simply, for all intents and purposes, the parties ceased operating pursuant to the JOA.

13.     As a result of the foregoing, MediaNews Group and CPC commenced litigation against Daily Gazette and DGHC for breach of the JOA, claiming the following damages: (a) $495,000 in unpaid management fees owed as of July 15, 2015; (b) approximately $1.8 million of future annual management fees through the expiration of the joint venture in 2024;[3] and (c) the loss of the reversionary interest in the "dailymail.com" web-site due to its sale to Associated Newspapers for $1.5 million.

14.     On August 27, 2017, MediaNews Group and CPC obtained an arbitration award against Daily Gazette and DGHC in the amount of $3,795,000 and, on January 19, 2018, the United States District Court for the Southern District of West Virginia confirmed the arbitration award.

---

[3]    The JOA continues in effect until June 30, 2024, and is automatically renewed for additional five-year terms unless any party gives written notice to the contrary at least 12 months prior to the end of the then-current term.  *See* JOA at § IV.

**RELIEF REQUESTED**

15. Although the parties have not been operating pursuant to the JOA for more than two years and MediaNews Group and CPC have already obtained an arbitration award against Daily Gazette and CPC for their purported pre-petition breach of the JOA, the Debtors, out of an abundance of caution, nevertheless seek the entry of an order authorizing the rejection of the JOA. Indeed, the relief sought by the Debtors is necessary for them to comply with the stalking horse asset purchase agreement, which requires as a condition to closing a Court order rejecting the JOA.

**BASIS FOR RELIEF REQUESTED**

16. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). An agreement is an executory contract if "'obligations of both the bankruptcy and the other party to the contract are so far underperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other.'" *RCI Tech. Corp. v. Sunterra Corp. (In re Sunterra Corp.)*, 361 F.3d 257, 264 (4th Cir. 2004) (internal citation omitted). A debtor's decision to reject an executory contract "should be 'accorded the deference mandated by the sound business judgment rule as generally applied by courts to discretionary actions or decisions of corporate directors.'" *In re Alpha Natural Res., Inc.*, 555 B.R. 520, 529-30 (Bankr. E.D. Va. 2016) (quoting *Lubrizol Enters. Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1046 (4th Cir. 1985)). Indeed, "[a] court should not second-guess a debtor's business judgment concerning the . . . rejection of an executory contract . . . unless there is a showing of bad faith or gross abuse of discretion." *Id.* (citing *Lubrizol Enters., Inc.*, 756 F.2d at 1047).

17. Here, the JOA has not been terminated and it includes unperformed obligations on the part of the Debtors, on the one hand, and CPC, on the other hand, including the obligations summarized in paragraph 10 above, such as DGHC's and CPC's obligations to furnish complete news and editorial services necessary and appropriate for the publication of their respective newspapers and to pay their own so-called "Editorial Expenses." Indeed, the JOA provides for a yearly management fee to be paid to CPC for providing its services under the JOA. Moreover, the JOA provides that upon its termination, CNH is obligated to distribute to CPC—after satisfaction of all creditors' claims—the assets CPC contributed to Charleston Newspapers in 2004. Accordingly, the JOA is an executory contract under applicable Forth Circuit precedent because it includes unperformed obligations that, if not performed, could constitute a material breach of the JOA.

18. As set forth above, since the merger of the newsrooms for the Charleston Gazette and Daily Mail in 2015 to form the single publication, the Charleston Gazette-Mail, the JOA is no longer applicable to the operation of Charleston Newspapers and, consequently, it would be unduly burdensome and detrimental to the Debtors' estates if they were required to comply with the terms of the JOA. Moreover, as set forth above, it is a condition to the closing on the anticipated sale of substantially all of the Debtors' assets that the Court enter an order rejecting the JOA. Accordingly, the Debtors have properly exercised their sound business judgment in determining to reject the JOA out of an abundance of caution. Moreover, rejection of the JOA at this time will be in the best interest of the Debtors' estates, as it will pave the way for a successful sale of the Debtors' business and assets.

19. Based upon the forgoing and out of an abundance of caution, the Court should enter an order authorizing the Debtors' rejection of the JOA.

WHEREFORE, the Debtors respectfully request the entry of an order rejecting the JOA and granting the Debtors such other and further relief the Court deems just and proper.

        Daily Gazette Company, *et al.*,
        By Counsel,

/s/ Joe M. Supple
Joe M. Supple (W.Va. Bar No. 8013)
SUPPLE LAW OFFICE, PLLC
801 Viand Street
Point Pleasant, WV 25550
304-675-6249
joe.supple@supplelaw.net