IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: DAILY GAZETTE COMPANY, *et al.*, | Case No. 2:18-bk-20028 |
| | (Jointly Administered) |
| Debtors. | Chapter 11 |

OBJECTION OF MEDIANEWS GROUP, INC.
AND CHARLESTON PUBLISHING COMPANY TO DEBTORS'
MOTION FOR AUTHORITY TO DISBURSE NET SALE PROCEEDS

Now come MediaNews Group, Inc. ("MediaNews") and Charleston Publishing Company ("CPC"), by counsel, and for their objection ("Objection") to the *Debtors' Motion for Authority to Disburse Net Sale Proceeds* [Doc. 152] (the "Disbursement Motion"), state the following:

### I.     Factual Background

1.     On January 30, 2018, the Debtors[1] filed petitions under title 11 of the United States Code (the "Bankruptcy Code"). No creditors' committee has been appointed in these chapter 11 cases.

2.     In their various first-day motions, also filed on January 30, 2018, the Debtors represented to the Court that they "made the decision to sell substantially all of their assets pursuant to section 363 of the Bankruptcy Code [because] [t]he Debtors believe that a sale of their assets and operations will maximize the potential return for creditors while ensuring the ongoing viability of their news and information products and the ongoing employment of

---

[1] The Debtors in these Chapter 11 Cases are as follows: Daily Gazette Company; Daily Gazette Holding Company, LLC; Charleston Newspapers Holdings, L.P.; Daily Gazette Publishing Company, LLC; Charleston Newspapers; and G-M Properties, Inc..

hundreds of people." See, Paragraph 10 of Docs. 3, 4, 5, 6, 7, 8, 9; see also, Doc. 10, ¶¶ 12, 27; Doc. 11, ¶ 30.

3. Also on January 30, 2018, the Debtors moved for approval of and procedures for the sale of substantially all of the Debtors' assets [Doc. 11] (the "Sale Motion"). As a basis for the relief sought, Debtors stated that:

> . . . the Debtors are pursuing the sale of their Assets with the intention of maximizes [sic] the value of such Assets as a going concern <u>for the benefit of all creditors</u> and stakeholders. Proceeding in this manner provides the best opportunity for the Debtors' business and legacy to be carried on for the benefit of local employees, vendors and the public at large. The Debtors negotiated the terms and conditions of the Stalking Horse APA at arm's length and good faith, remaining cognizant of their duties to all stakeholders. Accordingly, the Debtors submit that they have proposed the sale that is the subject of this Motion in good faith.

Sale Motion, ¶ 30 (emphasis added).

4. The Debtors relied upon this maximization of the value of assets for the benefit of <u>all</u> creditors as the basis for the relief requested in their other first-day motions, including motions requesting authorization to pay prepetition obligations related to taxes [Doc. 6], insurance premiums [Doc. 7], employee wages [Doc. 4], and customers, subscribers and advertisers [Doc. 9]. In one of Debtors' first-day motions, the Debtors sought authorization to pay pre-petition obligations related to certain Customer Programs (as defined in Doc. 9) on the basis that "[i]f they cannot maintain these programs, the Debtors risk harming their relationships with advertisers and subscribers, thereby jeopardizing the Debtors' ability to maximize value to stakeholders [through the sale of their assets and operations]." Doc. 9, ¶¶ 12, 37. The Debtors further rationalized that the payments proposed therein "will not reduce the Debtors' assets

available to other creditors" (Id., ¶ 37), and is, therefore, "in the best interests of their estates, their creditors, and all other parties in interest" (Id., ¶ 40).

5. United Bank is the primary secured creditor in this case. See, e.g., POC 1. However, the Schedules filed by the Debtors on February 22, 2018, list numerous other creditors, stakeholders and parties in interest such that the Debtors' liabilities are in excess of $33,000,000.

6. In the Schedules E/F filed on February 22, 2018, by Daily Gazette Company ("DGC") [Doc. 99] and Daily Gazette Holding Company, LLC ("DGHC") [Doc. 101], MediaNews and CPC are listed as unsecured creditors in the amount of $3,795,000.00, which amount is based on a Final Arbitration Award (the "Award") entered on August 28, 2017, awarding MediaNews and CPC $3,795,000.00, plus interest at the post-judgment rate from the date of the Award, against DGC and DGHC. On January 19, 2018, the United States District Court for the Southern District of West Virginia entered its Memorandum Opinion and Order confirming the Award in Civil Action No. 17-cv-03921.

7. In addition to the unsecured claim of MediaNews and CPC, the Debtors' schedules list various other unsecured claims, including that of Pension Benefit Guaranty Corporation, for total unsecured claims in the amount of approximately $19,595,000.00. However, no unsecured creditors' committee was appointed in these cases to represent the interests of unsecured creditors.

8. On March 8, 2018, the Debtors named HD Media Company, LLC ("HD Media") the successful bidder for acquisition of the Debtors' assets, pursuant to HD Media's asset purchase agreement ("HD Media APA") that included a gross purchase price of $11,487,243 (the "Purchase Price"). See, Doc. 121.

9. Thereafter, on March 12, 2018, the Court entered its order approving the sale of substantially all of the Debtors' assets to HD Media pursuant to the HD Media APA (the "Sale Order"). Doc. 141.

10. The Debtors have indicated that they anticipate closing on the HD Media APA on or before March 31, 2018 ("Closing"). See, Disbursement Motion, ¶ 17; see also, Doc. 153.

11. On March 16, 2018, Debtors filed the Disbursement Motion, seeking an order authorizing Debtors to distribute the Net Sale Proceeds (as defined in the Disbursement Motion) to United Bank upon Closing.

## II. Discussion

12. Despite Debtors' repeated representations to this Court that their goal in these proceedings was to "pursu[e] the sale of their Assets with the intention of maximizing the value of such Assets as a going concern for the benefit of all creditors and stakeholders" (see, Doc. 11 at ¶30 (emphasis added)), the Debtors now ask this Court to authorize distribution to only one (1) creditor, United Bank. MediaNews and CPC object to the Debtors' inappropriate invocation of Chapter 11 of the Bankruptcy Code for the benefit of one (1) creditor.

13. As no creditors' committee was appointed in this case, the Debtors have negotiated exclusively with, and propose a distribution exclusively for the benefit of the single creditor with the most economic leverage, United Bank. For instance, in the Notice of Successful Bidder filed on March 8, 2018, the Debtors state that they evaluated the HD Media bid "in consultation with their advisors and United Bank." Doc. 121. Other creditors had no bargaining power and no vote on the terms of what appears to be the invocation of chapter 11 of the Bankruptcy Code for a non-reorganization purpose, *viz.* to assist a secured creditor in liquidating its collateral. Therefore, MediaNews and CPC file this Objection on behalf of all

4

unsecured creditors in this case who will receive no distribution under the Debtors' proposal set forth in the Disbursement Motion.

14. Chapter 11 of the Bankruptcy Code does not exist to assist a secured creditor in liquidating its collateral. However that is precisely what the Debtors are doing here If the Disbursement Motion is granted, the only creditor who will benefit will be United Bank, a result that could have been accomplished outside of this Chapter 11 proceeding and without the involvement of this Court.

15. The Supreme Court of the United States has recognized that the purpose of Chapter 11 of Bankruptcy Code is to permit business debtors to reorganize and restructure their debts in order to revive the debtors' businesses and to maximize the value of the bankruptcy estate. See, Czyzewski v. Jevic Holding Corp., 137 S. Ct. 973, 985, 197 L. Ed. 2d 398 (2017), citing, Toibb v. Radloff, 501 U.S. 157, 163–164, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991). In addressing the purpose of the Bankruptcy Code in Jevic, the Supreme Court looked to the enacting legislation for the Bankruptcy Reform Act of 1994 (Jevic, 137 S.Ct. at 984), and the entirety of that cited provision is particularly instructive in this case, as it provides:

> The second objective of the bankruptcy system is to protect creditors in general by preventing an insolvent debtor from selectively paying off the claims of certain favored creditors at the expense of others. Because the essence of insolvency is that there is not enough money to pay all claims in full, there is an inevitable temptation among creditors to compete fiercely over the debtor's limited funds. The bankruptcy system is thus designed to enforce a distribution of the debtor's assets in an orderly manner in which the claims of all creditors are considered fairly, in accordance with established principles rather than on the basis of the inside influence or economic leverage of a particular creditor.

H.R. REP. 103-835, 33, 1994 U.S.C.C.A.N. 3340, 3341(emphasis added); see also, In re Lionel Corp., 722 F.2d 1063, 1069 (2d Cir. 1983) (noting that in enacting the 1978 Code, Congress

intended the safeguards of disclosure, voting, acceptance and confirmation in Chapter 11 of the Bankruptcy Code as protection for creditors).

16. In the case now before this Court, the Debtors invoked the protections of Chapter 11 of the Bankruptcy Code and have alluded to the Bankruptcy Code's purpose of maximizing the value of the estate. However, the Debtors have no intention of reorganizing, restructuring, fairly distributing assets, or apparently even converting to a liquidation under Chapter 7. Instead, the Debtors envision "properly dissolving the Debtors and any non-debtor affiliates pursuant to applicable law…." (Disbursement Motion at ¶19). In other words, the Debtors seem to be proposing a *sub-rosa* structured dismissal in this case, "on the basis of the . . . economic leverage of" the primary secured creditor, United Bank. Under Debtors' proposal, "the claims of all creditors are [not] considered fairly," and only United Bank will benefit. Jevic, 137 S.Ct. at 984.

17. The proposal for which Debtors seek this Court's approval in the Disbursement Motion is the type of transaction that courts have uniformly refused to allow on the grounds that they circumvent the Bankruptcy Code's procedural safeguards. "The bankruptcy court may not circumvent a chapter 11 reorganization plan by allowing the terms of a plan to be dictated by the sale of a major asset." In re Fremont Battery Co., 73 B.R. 277, 279 (Bankr. N.D. Ohio 1987); see also, e.g., Jevic, 137 S. Ct. at 986, In re Braniff Airways, Inc.*,* 700 F.2d 935, 940 (5th Cir. 1983) (prohibiting an attempt to "short circuit the requirements of Chapter 11 for confirmation of a reorganization plan by establishing the terms of the plan *sub rosa* in connection with a sale of assets"); In re Lionel Corp.*,* 722 F.2d 1063, 1069 (2d Cir. 1983) (reversing a Bankruptcy Court's approval of an asset sale after holding that § 363 does not "gran[t] the bankruptcy judge *carte blanche* " or "swallo[w] up Chapter 11's safeguards"); In re Biolitec, Inc.*,* 528 B.R. 261, 269-70

6

(Bkrtcy.Ct.N.J.2014) (rejecting a structured dismissal because it "seeks to alter parties' rights without their consent and lacks many of the Code's most important safeguards" and because "the Court must analyze the effect of the settlement on all parties to the bankruptcy proceeding, and not simply the largest creditor.").

18.  Debtors claim that their proposed distribution of Net Sale Proceeds to United Bank is justified pursuant to Section 363(b) of the Bankruptcy Code because they assert that it represents a sound exercise of the Debtors' business judgment. Disbursement Motion, ¶¶ 24-26. Debtors present no other facts, legal argument or support for their position that the relief requested in the Disbursement Motion is authorized by Section 363 of the Bankruptcy Code or is otherwise appropriate.

19.  Contrary to Debtors' suggestion, Section 363(b)[2] does not grant the Court unfettered authority to permit the disbursal of sale proceeds outside of the procedural safeguards built into Chapter 11 of the Bankruptcy Code. See, In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983); see also, In re Encore Healthcare Assocs., 312 B.R. 52, 55 (Bankr. E.D. Pa. 2004) (citing Lionel for refuting the debtor's assertion that § 363 confers a right and power to a debtor-in possession to sell assets outside the ordinary course free and clear of any interest in such property so long as the interest holder consents); In re Fremont Battery Co., 73 B.R. 277, 279 (Bankr. N.D. Ohio 1987) ("The bankruptcy court may not circumvent a chapter 11 reorganization plan by allowing the terms of a plan to be dictated by the sale of a major asset [pursuant to § 363(b)]"); In re Cont'l Air Lines, Inc., 780 F.2d 1223, 1227–28 (5th

---

[2] Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell or lease other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

Cir. 1986)("Undertaking reorganization piecemeal pursuant to § 363(b) should not deny creditors the protection they would receive if the proposals were first raised in the reorganization plan.").

20. In finding that Section 363(b) does *not* grant a bankruptcy judge *carte blanche*, the Second Circuit explained that:

> Several reasons lead us to this conclusion: the statute requires notice and a hearing, and these procedural safeguards would be meaningless absent a further requirement that reasons be given for whatever determination is made; similarly, appellate review would effectively be precluded by an irreversible order; and, finally, such construction of § 363(b) swallows up Chapter 11's safeguards. In fact, the legislative history surrounding the enactment of Chapter 11 makes evident Congress' concern with rights of equity interests as well as those of creditors.
>
> * * *
>
> The history surrounding the enactment in 1978 of current Chapter 11 and the logic underlying it buttress our conclusion that there must be some articulated business justification, other than appeasement of major creditors, for using, selling or leasing property out of the ordinary course of business before the bankruptcy judge may order such disposition under section 363(b).

In re Lionel Corp., 722 F.2d 1063, 1069-70 (2d Cir. 1983) (emphasis added) (discussing at length what should be considered in ruling upon a § 363(b) application, including the interests required to be weighed and considered under Chapter 11 and the safeguards of disclosure, voting, acceptance and confirmation present in Chapter 11).

21. In a more recent case with facts analogous to those now before this Court (where the asset sale was not in furtherance of a plan of liquidation or reorganization), the Court considered the factors set forth in Lionel and raised, *sua sponte,* the propriety of a Section 363 sale, the sole purpose of which was to liquidate assets for the benefit of the secured creditor. In re Encore Healthcare Assocs., 312 B.R. 52, 54 (Bankr. E.D. Pa. 2004). After careful analysis,

the Court in Encore found no business justification for the proposed sale of essentially all of the debtor's assets, so denied the Section 363 sale. Id.

22. In reaching its decision, the Encore Court quoted language from In re Fremont Battery Co., 73 B.R. 277, 279 (Bankr. N.D. Ohio 1987), which also involved a situation where the secured creditor was the only creditor that would benefit from a proposed sale of a debtor's assets, such that no funds would remain after the proposed sale for the benefit of other creditors or that would provide funds from which a reorganization plan could be proposed. See, Fremont, 73 B.R. at 279. In rejecting the proposed sale in Fremont, that Court explained:

> Considering the *Lionel* factors set forth above as they pertain to the instant situation, this court finds that no business reason justifies Debtor's proposed sale. The proposed sale would not, as a whole benefit the Debtor or creditors. In fact, if allowed, the sale would terminate Debtor's existence. If Debtor's proposed sale were authorized, the likelihood of reorganization would dissipate as there would remain no assets from which a plan could be proposed. Additionally, the proceeds from the proposed sale would, at most, benefit one creditor only. The sale would not create proceeds that would inure to the benefit of the unsecured creditors. . . .
>
> \* \* \*
>
> Additionally, as previously stated, sanctioning the proposed sale would have the practical effect of dictating the terms of the reorganization plan. The bankruptcy court may not circumvent a chapter 11 reorganization plan by allowing the terms of a plan to be dictated by the sale of a major asset. *See Braniff,* 700 F.2d at 940. The court may not, then, authorize Debtor's proposed sale as its result contemplates restructuring the Debtor-creditor relationship and exceeds the scope of § 363.

In re Fremont Battery Co., 73 B.R. 277, 279 (Bankr. N.D. Ohio 1987).[3]

---

[3] The opinion in Fremont went so far as to suggest that the debtor's proposed sale would constitute an abuse of Chapter 11 because the sale would terminate the debtor's ongoing business and the debtor would be without assets from which a reorganization plan could be proposed. Fremont, 73 B.R. at 279. As the Encore court recognized, Fremont is an older opinion decided with the view that liquidation of assets is not a proper use of Chapter 11 bankruptcy proceedings; although Chapter 11 proceedings are now frequently utilized to liquidated assets. Nevertheless, the Court in Encore noted that:

> . . . there are limits to the use of § 363, and it is clear that Chapter 11 liquidations are still subject to the proscriptions of Chapter 11 concerning, *inter alia,* the filing of a plan. Recognizing as much, most secured creditors

9

23. As in <u>Encore</u> and <u>Fremont</u>, the attempt of the Debtors in this case to disburse the proceeds from the sale of substantially all of their assets to only one (1) creditor, United Bank, circumvents the protections afforded creditors in Chapter 11 of the Bankruptcy Code, such as disclosure, voting, acceptance and confirmation of a plan of liquidation or reorganization.

24. What is essentially a *sub-rosa* structured dismissal proposed by Debtors in this case "does not preserve the debtor[s] as a going concern; it does not make the disfavored creditors better off; it does not promote the possibility of a confirmable plan; it does not help to restore the *status quo ante*; and it does not protect reliance interests." <u>Jevic</u>, 137 S. Ct. at 985-86. There is no Bankruptcy Code-related objective to the proposed distribution. <u>Id</u>. The de facto structured dismissal proposed by the Debtors exceeds the scope of Section 363(b) and denies MediaNews, CPC and other unsecured creditors the benefits afforded them under Chapter 11 of the Bankruptcy Code.

25. Unless the Debtors are prepared to offer unsecured creditors a carve-out from the sale proceeds, MediaNews, CPC and the other unsecured creditors are entitled to the procedural protections guaranteed to them under Chapter 11 of the Bankruptcy Code. <u>See</u>, <u>e.g.</u>, <u>In re World Health Alternatives, Inc.</u>, 344 B.R. 291, 303–04 (Bankr. D. Del. 2006) (approving settlement agreement that included "carve-out" for unsecured creditors, as negotiated by Creditors' Committee, and noting that absent approval of the settlement agreement, only the one secured creditor "would be a winner"); <u>Encore</u>, 312 B.R. at 57 n.10 ("there are limits to the use of § 363, and it is clear that Chapter 11 liquidations are still subject to the proscriptions of Chapter 11

---

understand the necessity of making some distribution available to other creditors as the price of a court-approved sale. An asset sale under the facts presented to me goes beyond the most liberal interpretation of *Lionel.*
<u>In re Encore Healthcare Assocs.</u>, 312 B.R. at 57 n. 10.

concerning, *inter alia,* the filing of a plan. Recognizing as much, most secured creditors understand the necessity of making some distribution available to other creditors as the price of a court-approved sale.")

26. In conclusion, although the purpose stated and relied upon by Debtors for the relief they have requested from this Court throughout these proceedings has been maximizing recovery for all creditors and stakeholders (plural), the Debtors now ask this Court to approve a distribution of assets that will benefit only one (1) creditor, United Bank, and will "swallow up Chapter 11's safeguard" for all of the remaining creditors, including MediaNews and CPC. See, Lionel, 722 F.2d at 1069. Debtors' Disbursement Motion will "short circuit the requirements of Chapter 11" (see, Braniff, 700 F.2d at 940), is in opposition to the objectives of the bankruptcy system, and therefore should be denied.

WHEREFORE, MediaNews Group, Inc. and Charleston Publishing Company respectfully request that this Court enter an order denying the Debtors' Disbursement Motion outside the context of a Chapter 11 plan of reorganization or liquidation, and granting such other and further relief as justice requires.

                    **MEDIANEWS GROUP, INC.**
                    **AND CHARLESTON PUBLISHING**
                    **COMPANY,**

                    By Counsel:

/s/ Steven L. Thomas
Steven L. Thomas (WVSB #3738)
Thomas H. Ewing (WVSB #9655)
Courtney A. Kirtley (WVSB #9414)
Kay Casto & Chaney PLLC
P.O. Box 2031
Charleston, West Virginia 25327
Tel: (304) 345-8900
Fax: (304) 345-8909
sthomas@kaycasto.com
tewing@kaycasto.com

ckirtley@kaycasto.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

In Re:  DAILY GAZETTE COMPANY,                    Case No. 2:18-bk-20028

      Debtor.                                                    Chapter 11


**CERTIFICATE OF SERVICE**

I do hereby certify that on **March 27, 2018**, I filed the foregoing *Objection of MediaNews Group, Inc. and Charleston Publishing Company to Debtors' Motion for Authority to Disburse Net Sale Proceeds* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following participants:

>Richard Neely, Esq.
>Neely & Callaghan
>159 Summers Street
>Charleston, WV  25301
>  *Counsel for Debtor*

>Joe M. Supple, Esq.
>Supple Law Office, PLLC
>801 Viand Street
>Point Pleasant, WV 25550

>- and -

>Brian A. Audette, Ill. Bar No. 66277056
>Perkins Coie, LLP
>131 S. Dearborn St., Suite 1700
>Chicago, IL 60603
>  *Co-Counsel for Debtor*

>James S. Crockett, Jr., Esq.
>Spilman Thomas & Battle, PLLC
>P.O. Box 273
>Charleston, West Virginia 25321-0273

>- and -

Peter M. Pearl, Esq.
Spilman Thomas & Battle, PLLC
P. O. Box 90
Roanoke, Virginia 24002
   *Counsel for United Bank*

Marc S. Pfeuffer, Esq.
Pension Benefit Guaranty Corporation
Office of the General Counsel
1200 K Street NW, Suite 340
Washington, DC  20005
   *Counsel for Pension Benefit Guaranty Corporation*

Arthur M. Standish, Esq.
Sarah C. Ellis, Esq.
Evans L. King, Jr., Esq.
Steptoe & Johnson PLLC
P.O. Box 1588
Charleston, WV  25326-1588
   *Counsel for Charleston Newspapers, LLC*

Craig L. Selby
1419 Nottingham Road
Charleston, WV  25314

Ezra H. Cochran
6664 S.E. 55th Street
Okeechobee, FL  34974-2542


                        /s/  Steven L. Thomas
                        Steven L. Thomas (WVSB #3738)
                        Kay Casto & Chaney PLLC
                        P. O. Box 2031
                        Charleston, WV  25327
                        sthomas@kaycasto.com