**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Daily Gazette Company, *et al.*, | ) | Case No. 18-20028 |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |

**DEBTORS' RESPONSE TO OBJECTION OF MEDIANEWS GROUP, INC.
AND CHARLESTON PUBLISHING COMPANY TO DEBTORS'
MOTION FOR AUTHORITY TO DISBURSE NET SALE PROCEEDS**

Daily Gazette Company, and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), hereby respond (this "Response") to the Objection of MediaNews Group, Inc. and Charleston Publishing Company to Debtors' Motion[2] for Authority to Disburse Net Sale Proceeds (the "Objection")[3] as follows:

**I.   These Chapter 11 Cases Have Not Solely Benefitted United Bank**

1.   There is perhaps no bigger fallacy in the Objection than the Objectors' persistence that these Chapter 11 Cases were filed and have been run solely for the benefit of United Bank. *See e.g.*, Obj. at 4 (the Debtors invoked "Chapter 11 of the Bankruptcy Code for the benefit of one (1) creditor"), at 5 ("the only creditor who will benefit will be United Bank"), and at 6 ("'the claims of all creditors are [not] considered fairly,' and only United Bank will benefit"). The

---

[1]   The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's taxpayer identification number are as follows: Daily Gazette Company (4480); Daily Gazette Holding Company, LLC (2981); Charleston Newspapers Holdings, L.P. (3028); Daily Gazette Publishing Company, LLC (3074); Charleston Newspapers (6079); and G-M Properties, Inc. (4124). The Debtors' headquarters are located at 1001 Virginia St. E, Charleston, West Virginia 25301.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[3]   For ease of reference, MediaNews Group, Inc. and Charleston Publishing Company will be referred to collectively as the "Objectors."

Objectors' contentions represent an unfair and gross mischaracterization of these Chapter 11 Cases and the Sale process.

2. As the Court is aware and as set forth in more detail in the Declaration of Norman W. Shumate III in Support of Chapter 11 Filings and First-Day Motions [Dkt. #2], mounting debt, a series of unfortunate events—including the Objectors' pursuit of a judgment against Debtors Daily Gazette Company ("DGC") and Daily Gazette Holding Company, LLC ("DGHC")[4]—and a general decline in the newspaper industry led the Debtors to conclude that they had to pursue a going-concern sale to maintain their newspaper for the benefit of the public and maximize the value they could obtain in exchange for their business. Such decision was not made lightly and was not made only with the interests of United Bank in mind. Rather, the Debtors took into account the fiduciary duties they owed to all constituencies and made the decision—largely dictated by potential purchasers' considerations and requests—to pursue a sale through chapter 11.

3. As it turns out, the Chapter 11 Cases and the Sale have substantially benefited, and will continue to substantially benefit, numerous constituencies. First and foremost among them are the Debtors' employees. At the outset of the Chapter 11 Cases, the Debtors obtained authorization to pay, and did in fact pay, all pre-petition employee claims for wages and related benefits. Moreover, as the imminent Closing approaches, HD Media has elected to hire more than 160 of the Debtors' employees. Accordingly, by electing to sell their assets as a going

---

[4] It is questionable whether the Objectors would even be entitled to a distribution if funds were carved out from the Sale for the benefit of general unsecured creditors, because the assets sold were owned by Charleston Newspapers and G-M Properties, Inc., two entities against which the Objectors do not hold claims. Indeed, the entities against which the Objectors' claims lie, DGC and DGHC, did not have any material assets that were included in the Sale.

concern through chapter 11, the Debtors were able to save and maintain more than 160 jobs for the local community.

4. Second, the Debtors' vendors and contract counter-parties have benefitted and will continue to benefit from the Debtors' decision to sell their assets through chapter 11. For instance, at the outset of the Chapter 11 Cases, the Debtors were authorized to maintain their ongoing customer programs and practices to minimize disruption to the Debtors' business occasioned by the chapter 11 filings. Indeed, many of the Debtors' creditors, including vendors, newspaper carriers, credit card processors and the like, received payment on account of certain pre-petition claims and were assured through the Debtors' authorized use of cash collateral that the Debtors would have the necessary resources to continue operating in the ordinary course. Significantly, in connection with the anticipated Closing of the Sale, HD Media has elected to acquire—through the Debtors' assumption and assignment thereof—125 of the Debtors' executory contracts and unexpired leases, determining to forego a mere seven executory contracts. Accordingly, no less than 125 counter-parties to contracts are assured that their contracts and associated income—including the payment of cure costs totaling approximately $20,000—will be paid and maintained on a going forward basis. Similarly, it is more likely than not that HD Media will continue to do business with local vendors who may not have had contracts with the Debtors, but who are no doubt familiar with the Debtors' business and have the knowledge and experience to aid HD Media in its early transitional stages.

5. Third, the news reading public and community at large benefit from the continued publication of the Pulitzer Prize winning Charleston Gazette-Mail, particularly in light of the anticipated stewardship of a local buyer and investors. As the Court may be aware through certain letters filed with the Court and certain advertisements run in the Charleston Gazette-Mail,

the community desperately wanted the Charleston Gazette-Mail saved and wanted to maintain local influence over its publication. Needless to say, the Debtors were able to achieve this result after a competitive bidding process and the emergence of HD Media as the successful bidder.

6. Put simply, the favorable results generated by these Chapter 11 Cases and the Sale may not have been possible had the Debtors not made the difficult decision to sell substantially all of their assets as a going concern through chapter 11—a decision that the Debtors were not required to make, but one that they felt was necessary to do right by as many creditors and stakeholders as possible. Indeed, had the Debtors refrained from seeking relief under the Bankruptcy Code, they and their assets would have been vulnerable to aggressive creditor collection tactics that could have substantially derailed the Debtors' business and/or materially depressed value. Indeed, had the Debtors continued along the status quo outside of chapter 11 instead of pursuing their value-maximizing strategy, it is very likely that the outcome would have been a forced liquidation of the Debtors' business and assets, which would have fetched materially less than that which HD Media is paying for the Debtors' assets and resulted in the loss of jobs and business for local vendors and contract counter-parties.

7. The Debtors acknowledge that it is unfortunate that the Sale process did not generate sufficient value to make a distribution to general unsecured creditors but, contrary to the Objectors' contentions, that is not an unusual result in chapter 11. Nevertheless, the reality is that these Chapter 11 Cases and the Sale have actually produced a tremendous benefit to the community, employees, contract counter-parties, vendors and the news reading public. That United Bank may also benefit from these Chapter 11 Cases and the Sale does not minimize or take away from these other substantial benefits that the Debtors have been able to procure throughout this process. Accordingly, it is irresponsible and inaccurate for the Objectors to

maintain so vociferously that the Debtors have abused chapter 11 and only sought to benefit the interests of United Bank.

## II. The Debtors Are Not Seeking A Final Adjudication Of These Chapter 11 Cases

8. As set forth in the Motion, the Debtors are merely seeking authority to disburse certain Net Sale Proceeds to United Bank upon Closing, which proceeds represent United Bank's collateral.[5] To clarify, if the Motion is granted, the Debtors will still retain more than $1.3 million of United Bank's collateral for the benefit of the Debtors' estates so that the Debtors can ensure that their estates will not be rendered administratively insolvent. *See* Mot. at ¶ 23. Accordingly, following Closing, the Debtors will still need to administer substantial funds, in addition to addressing, among other things, the disposition of Daily Gazette Company's real estate in Tucker County, West Virginia, administrative expense claims, and the resolution of all pending employee obligations. As such, granting the Motion will not sanction an impermissible end to these Chapter 11 Cases, and the Debtors are not, contrary to the Objectors' contentions, proposing or seeking approval of a so-called "sub-rosa" or "de facto" "structured dismissal." Indeed, the Debtors are not seeking the approval of any final adjudication of these Chapter 11 Cases at this time. How these cases will ultimately conclude remains to be seen and the Court need not address any such hypothetical disposition until it is presented with a proper request.

9. Consequently, the Objectors' reliance on *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017), is misplaced. For instance, in *Jevic*, the Supreme Court considered whether a Bankruptcy Court properly authorized the dismissal of a chapter 11 bankruptcy case and ordered a distribution of estate assets to secured and general unsecured creditors but which skipped

---

[5] No creditors or other parties-in-interest filed an objection to the United Bank Claim on or prior to the Objection Deadline. Moreover, the Sale Order provides that all liens shall attach to the Sale proceeds. *See* Sale Order [Dkt. #141] at ¶ 8. Consequently, there can be no dispute that the Sale proceeds constitute United Bank's collateral.

creditors holding priority claims senior to the claims of general unsecured creditors. 137 S. Ct. at 978. Here, neither of these factors is present. First, the Debtors have not sought to dismiss these Chapter 11 Cases; thus, *Jevic* and the other cases relied upon by the Objectors addressing so-called structured dismissals are not germane to this dispute. Second, the Debtors are not proposing to make a distribution that violates the priority scheme established by the Bankruptcy Code. Rather, the Debtors are merely seeking to make a single distribution of collateral to their secured lender. As such, *Jevic* is not instructive.

10. Likewise, the Debtors' Supplemental Budget does not contemplate payments that would violate the Bankruptcy Code's priority scheme, as such budget only contemplates the payment of administrative expense claims, the vast majority of which will have arisen prior to Closing, including employee wage and benefit obligations and claims of vendors for goods and services provided to the Debtors prior to Closing. To the extent the Debtors intend to make any payments or other disposition of assets following Closing outside the ordinary course of business, the Debtors understand and acknowledge that Court approval will be required. In other words, the Debtors' Motion does not seek approval of the disposition or distribution of all remaining assets and cash post-Closing.

11. For all of these reasons, the Objectors' statement (at 6) that "the Debtors have no intention of . . . fairly distributing assets" is perplexing and unsubstantiated. Indeed, the Debtors have only made payments to creditors that were expressly authorized by the Court in connection with the Debtors' first-day motions or payments for post-petition goods and services provided to the Debtors. Even now, the Debtors are only seeking to pay funds to United Bank, which are subject to the bank's properly perfected security interests. The Debtors fail to see how such a payment would amount to an unfair distribution of assets, as no other creditor or party in interest

could have a claim to such funds superior to that of United Bank. Forcing the Debtors to file a plan or converting these cases at this time does not change the result.

### III. The Debtors Have Maximized Value And The Sale Has Already Been Approved

12.   It is undisputed that the Sale to HD Media has already been approved and that the Sale Order now constitutes a final, non-appealable order. Moreover, the Objectors' counsel, Steven Thomas, stated in open court on March 28, 2018 that the Objectors' goal was not to disrupt or delay the Closing. Moreover, Mr. Thomas acknowledged on the record at that same hearing that the Debtors had done a "good job" of maximizing the value of their assets. Yet, the Objectors nevertheless criticize the Debtors for engaging in a value-maximizing strategy through chapter 11, which strategy was unquestionably designed to achieve the highest and best bid for the Debtors' assets. Indeed, this is the only strategy that was available to the Debtors that had a chance of generating enough value to enable general unsecured creditors to share in a distribution. It is unfair, in hindsight, to criticize the Debtors and their Sale process because it turns out that general unsecured creditors are out of the money. That does not change the fact that the Debtors properly invoked chapter 11 to dispose of their assets for the benefit of all creditor constituencies.

### IV. Conclusion

13.   The Debtors properly invoked chapter 11 and successfully maximized the value of their assets through a fair and transparent sale process conducted in accordance with the Bankruptcy Code. Now, the Debtors are properly exercising their business judgment in agreeing to disburse the Net Sale Proceeds to United Bank upon Closing, which will still result in substantial funds being made available to the Debtors to ensure that, among other things, all administrative expense claims are paid, tax returns are filed, employee obligations are satisfied, and employee benefit plans are properly terminated. The Objectors have failed to demonstrate

that the Debtors are acting in violation of any express provision of the Bankruptcy Code or that their intentions are inappropriate or unwarranted under the circumstances. Accordingly, the Court should overrule the Objection and grant the Motion.

| | |
|---|---|
| Dated:  March 29, 2018 | **PERKINS COIE LLP**<br><br>By: /s/ *Brian A. Audette*<br>Brian A. Audette (IL Bar No. 6277056)<br>(Admitted Pro Hac Vice)<br>131 S. Dearborn St., Suite 1700<br>Chicago, IL 60603<br>Telephone: 312.324.8534<br>baudette@perkinscoie.com<br><br>-and-<br><br>Joe M. Supple, Bar. No. 8013<br>SUPPLE LAW OFFICE, PLLC<br>801 Viand St.<br>Point Pleasant, WV 25550<br>Telephone: 304.675.6249<br>joe.supple@supplelaw.net<br><br>*Co-Counsel to the Debtors and Debtors in Possession* |

139217732.1

## **CERTIFICATE OF SERVICE**

Brian Audette, an attorney, hereby certifies on March 29, 2018, he caused *Debtors' Response to Objection of MediaNews Group, Inc. and Charleston Publishing Company to Debtors' Motion for Authority to Disburse Net Sale Proceeds* to be filed via the Court's CM/ECF system which caused notification and service of the document to be made upon the parties registered to receive ECF notifications listed below.

- David L. Bissett    David.L.Bissett@usdoj.gov
- James S. Crockett    jcrockett@spilmanlaw.com, bmarion@spilmanlaw.com; scormany@spilmanlaw.com; ppearl@spilmanlaw.com
- Sarah Ellis    sarah.ellis@steptoe-johnson.com
- Thomas H. Gilpin    thomas.gilpin@dinsmore.com
- Evan L. King    evans.king@steptoe-johnson.com
- Marc S. Pfeuffer    pfeuffer.marc@pbgc.gov, efile@pbgc.gov
- W. Bradley Sorrells    wbs@ramlaw.com
- Arthur M. Standish    art.standish@steptoe-johnson.com
- Joe M. Supple    info@supplelaw.net
- Steven L. Thomas    sthomas@kaycasto.com, dcummins@kaycasto.com; dhughes@kaycasto.com; lwalker@kaycasto.com
- United States Trustee    ustpregion04.ct.ecf@usdoj.gov

*Brian A. Audette*

139217732.1