**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **DAILY GAZETTE**, *et al*, | ) | **Case No. 2:18-bk-20028** |
| | ) | |
| | ) | |
| **Debtor** | ) | |

**UNITED BANK'S BRIEF IN RESPONSE TO OBJECTION OF MEDIA NEWS GROUP, INC. AND CHARLESTON PUBLISHING COMPANY TO DEBTORS' MOTION FOR <u>AUTHORITY TO DISBURSE NET SALE PROCEEDS</u>**

Comes now United Bank, by and through counsel does hereby file this Brief in Response to Objection of Media News Group, Inc. and Charleston Publishing Company (collectively, "MNG") to Debtors' Motion for Authority to Disburse Net Sale Proceeds.

### I. Background

1. On March 16, 2018, the Debtors filed their Motion for Authority to Disburse Net Sale Proceeds (the "Motion") [Docket No. 152]. In the Motion, the Debtors sought authority, among other things, to disburse Net Sales Proceeds (as defined in the Motion) derived from the sale of substantially all assets of the Debtors (the "Sale") to United, as the secured creditor in these cases.

2. The Debtors sought approval of the Sale by motion (the "Sale Motion") and the Sale was authorized and approved by this Court by its Order (A) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (B) Authorizing and Approving the Debtors' Performance Under the Asset Purchase Agreement, (C) Approving the Assumption and Assignment of Certain of the Debtors' Executory

and Unexpired Leases Related Thereto, and (D) Granting Related Relief entered on March 12, 2018 [Docket No. 141] (the "Sale Order").

3. In the Motion, the Debtors set forth a wind down budget in the amount of $1,345,818 (the "Holdback"). These funds are contemplated to come from the proceeds of the Sale and comprise collateral of United. Without these funds, the Debtors would not have the wherewithal to pay the expenses associated with the finishing these cases.

4. On March 27, 2018, MNG filed its Objection to Debtors' Motion for Authority to Disburse Net Sale Proceeds (the "Objection") [Docket No. 170]. The Objection raises a number of points with respect to the Sale and also prospectively in the event the Debtors seek to obtain a structured dismissal in these cases. To date, no such motion has been filed. The only issue before the court is whether the Debtors may make a distribution to United on its secured claim.

5. A hearing was held on the Motion and the Objection on March 28, 2018 (the "Hearing").

## II. Claim of Bank

6. On January 30, 2018, the Debtors filed their Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Obtain Postpetition Financing with Priority over Certain Administrative Expenses and Secured by Liens on Property of the Estate Pursuant to 11 U.S.C. Section 364, (II) Authorizing Debtors to Use Cash Collateral and Other Collateral and Granting Adequate Protection Pursuant to 11 U.S.C. Sections 361 and 363, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief (the "Cash Collateral/DIP Financing Motion") [Docket No. 10]. On February 1, 2018, this Court entered its Interim Order (I) Authorizing Debtors to Obtain Postpetition Financing with Priority over Certain Administrative Expenses and Secured by Liens on Property of the Estate Pursuant to 11

U.S.C. Section 364, (II) Authorizing Debtors to Use Cash Collateral and Other Collateral and Granting Adequate Protection Pursuant to 11 U.S.C. Sections 361 and 363, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief (the "Interim Order") [Docket No.39], authorizing the use of cash collateral and for the Debtors to obtain DIP financing. As part of the Interim Order, parties were given forty-five (45) days to object to the claim of United commencing from the date United filed its proof of claim (the "Objection Bar Date").

7. There were no objections to the Cash Collateral/DIP Financing Motion or the terms of the Interim Order, including the Objection Bar Date. United filed its proof of claim (the "United Proof of Claim") on February 6, 2018 [Claim No. 1] asserting a secured claim in the amount of $16,505,381.73 collateralized by virtually all assets of the Debtors. The United Proof of Claim had attached as exhibits, all applicable loan documents establishing the claim of United and its perfected security interest.

8. The Court set the final hearing on the Cash Collateral/DIP Financing Motion for March 9, 2018. No objections were filed and the Court entered its Final Order on March 12, 2018 (the "Final Order") [Docket No. 140]. The appeal period with respect to the Final Order ran fourteen days thereafter. No appeal was taken. Once final, the relief granted by the Court under the terms of the Final Order, including the Objection Bar Date, was no longer subject to challenge. No objections were filed to the United Proof of Claim.

9. United has not received a payment from the Debtors since May, 2017. The Debtors have been operating since that time using the proceeds of United's collateral which United allowed so that the Debtors could remain in business.

10. United has made every accommodation to insure that administrative claims in these cases are paid, including agreeing to the amounts requested by the Debtors which make up the Holdback. What United has asked for in return and what is of critical importance to the Bank is for the sale to close with United receiving its net disbursement prior to the end of the first quarter of 2018. The parties have worked extremely hard to accommodate this timeframe.

11. As a result of the failure to make payments and the general financial struggles of the Debtors United has been forced to account for this loan as a non-preforming asset ("NPA") for a significant period of time. Like all financial institutions United is charged with working to minimize the total amount of NPA's it carries on its balance sheet as there are tangible costs to a bank for carrying such NPAs above and beyond the loss of interest income. United has prior to the filing of these cases and throughout the bankruptcy, demonstrated a willingness to work with the Debtors despite these costs in an effort to maximize the value of the assets not only for United's benefit but also for the trade creditors, employees, and the community at large. Limiting the ability of the Debtors to disburse funds prior March 31, 2018, despite the sale of United's collateral will unduly prolong and increase the negative financial impact to United while not generating any additional value for the estate or changing the outcome for the creditors in these cases.

### III. Claim of MNG

12. MNG has an arbitration award against certain of the Debtors in the amount of $3,795,000 (the "Arbitration Award"). The Arbitration Award relates to the transfer by certain of the Debtors of a URL without the consent of MNG which MNG alleges was a requirement of such transfer and for nonpayment of certain management fees. In addition, MNG has a lawsuit

presently pending against United because United, in its capacity as a secured creditor with a lien interest in the proceeds of the sale of the URL, received a portion of such proceeds.

13. In the Objection, MNG admits that its claim from the Arbitration Award is scheduled only in the Daily Gazette Company and Daily Gazette Holding Company cases. A review of the Schedules of Assets and Liabilities for these two cases shows that neither estate has any assets which were the subject of the Sale. The Debtors' cases are only consolidated on an administrative basis, not substantively. As a result, even if there were a carve-out of additional funds beyond the Administrative Claim Carve-Out, MNG would have no right to participate in such distribution.

### IV. The MNG Objection

14. The Objection focuses on three primary arguments. First, that the case was filed for inappropriate purposes and benefits one creditor, United and that a sale could have been accomplished outside chapter 11. Second, MNG state that the Debtors seem to be proposing a "*sub-rosa* structured dismissal" of these cases. Third, that there is some sort of entitlement to proceeds being made available for general unsecured creditors.

15. As set forth herein, United is carving out the Holdback from the proceeds of its collateral so that these cases are not administratively insolvent. From United's perspective it would be financially be better off if either (i) the sale had been consummated with the original bidder, Charleston Newspapers, LLC outside of bankruptcy or, (ii) these cases were converted to chapter 7 cases post-closing of the Sale. A sale outside of bankruptcy, when taking into account the costs of these proceedings, would have netted United a higher recovery. In fact, it was the original bidder who requested that the sale be conducted through a chapter 11 proceeding. If the cases were to be converted, United would keep the Holdback and the chapter 11 cases would

become administratively insolvent. This is not the desire of United or the Debtors. In fact, the Debtors and United have worked together to allow the managed wind down of these estates and to be sure these cases would be adequately funded. This collaborative effort has resulted in the preservation of a going concern business, jobs, payment of trade creditors and counter-parties to executory contracts and retention of a customer for trade creditors in the future. None of this would have occurred if United had proceeded to enforce its rights under its loan documents.

16. To the extent MNG seeks now to take issue with the Sale, it had ample opportunity to object to the Sale Motion. In fact, MNG represented to the Court that is was satisfied with the timeframe set forth in the Sale Motion and it did not want to stand in the way of a closing. The Sale Order is a final order of this Court and is no longer subject to challenge. MNG had an opportunity to object and chose not to. In fact, their statements to the Court could be interpreted as supporting the process. MNG cannot now come back and complain that the Sale did not result in a purchase price that paid United in full, generated funds to pay administrative expenses and to make a distribution to general unsecured. Indeed, United hoped that the Sale would result in a competitive bidding situation which would have resulted in a significantly higher recovery. All parties had to rely that the marketing efforts of the Debtors would realize the highest and best value for the assets of the business. There is nothing in the record of these cases to demonstrate that such was not the case.

17. With respect to the speculative statement that these cases appear to headed toward a "*sub-rosa* structured dismissal." This issue is not before the Court and not ripe for determination.

18. Lastly, MNG generally argues that had a committee of unsecured creditors been appointed there likely would have been funds left for general unsecured creditors in these cases.

First, this statement is nothing more than mere speculation. Creditors in these cases were not interested in serving on a committee. Second, given the priority scheme established by the Bankruptcy Code and the amount realized for the sale of the Debtors' business, there is no legal theory which would allow MNG and other unsecured creditors to jump ahead of or the secured claim of United or administrative claimants to receive a distribution.

19.     What is clearly missing from the Objection is any argument that United does not have a valid perfected secured claim and that United is not entitled to be paid. The points raised in the Objection relate to matters that occurred in the past and are the subject of final orders of this Court, or which may or may not occur in the future and are not before this Court and are highly speculative what ifs.

20.     Counsel for MNG made a statement at the Hearing which indicated that it was only a committee's responsibility to review claims of other creditors. Upon information and belief, MNG performed diligence with respect to the secured claim of United. Prior to the filing of the United Proof of Claim, MNG requested a copy of one of United's loan documents. MNG could have but chose not to object to the United Proof of Claim.

## V. Conclusion

21.     MNG has participated in these cases from the outset. In fact, MNG at one time was a prospective bidder for the assets of the Debtors and as a result, has had access to the Debtors' data room containing all diligence materials for the sale. MNG knows virtually everything there is to know regarding these Debtors. MNG chose not to bid and now comes into this case at the eleventh hour and files its first objection in these proceedings to try and prevent United from being paid a portion of its secured claim. The only logical motive of MNG is,

without any legal basis, to try and force United to agree to leave even more money on the table. No other creditor has objected to the Motion. United stands to lose approximately $6.0 million with respect to this credit and is merely asking that a portion of its allowed secured claim be paid before the end of this quarter to alleviate additional financial pressures. MNG has claims solely against entities that have no assets which are the subject of the Sale. The Objection raises issues that have already been decided by this Court and are the subject of a final order and to which MNG did not object. With respect to a carve-out for general unsecured creditors, based on the priority scheme of the Bankruptcy Code, there is no entitlement to a distribution. Lastly and perhaps most importantly, nowhere does MNG allege that United does not have the right to be paid. There is no legal theory on which MNG can rely which would prevent the Debtors from using their business judgment to pay a validly perfected secured creditor. Whether these cases are dismissed, converted or the Debtors file a plan of liquidation, the end result is there are no funds available for unsecured creditors. The Objection is nothing more than MNG's effort to squeeze United for money to which MNG is not entitled.

22. United adopts and incorporates herein by reference the arguments raised by the Debtors in their Response to Objection of Media News Group, Inc. and Charleston Publishing Company to Debtors' Motion for Authority to Disburse Net Sale Proceeds.

UNITED BANK

By Spilman Thomas & Battle, PLLC

/s/ James S. Crockett, Jr.
James S. Crockett, Jr. (WVSB #9229)
Spilman Thomas & Battle, PLLC
P.O. Box 273
Charleston, West Virginia 25321-0273
Telephone: (304) 340-3824
Facsimile: (304) 340-3801
jcrockett@spilmanlaw.com

Peter M. Pearl, Esquire (VSB #22344)
Spilman Thomas & Battle, PLLC
P. O. Box 90
Roanoke, Virginia 24002
Telephone: (540) 512-1800
Facsimile: (540) 342-4480
ppearl@spilmanlaw.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

IN RE:  DAILY GAZETTE COMPANY,					Case No. 2:18-bk-20028

        Debtor							Chapter 11

## CERTIFICATE OF SERVICE

      I, James S. Crockett, Jr., do hereby certify that on March 29, 2018, the foregoing **Brief in Response to Objection of Media News Group, Inc. and Charleston Publishing Company to Debtors' Motion for Authority to Disburse Net Sales Proceeds** was filed with the Court using the CM/ECF system which will send notification of such filing.

      /s/ James S. Crockett, Jr.
James S. Crockett, Jr.  (WVSB #9229)
Spilman Thomas & Battle, PLLC
P.O. Box 273
Charleston, West Virginia 25321-0273
Telephone:  (304) 340-3824
Facsimile:  (304) 340-3801
jcrockett@spilmanlaw.com

Peter M. Pearl, Esquire (VSB #22344)
Spilman Thomas & Battle, PLLC
P. O. Box 90
Roanoke, Virginia  24002
Telephone: (540) 512-1800
Facsimile: (540) 342-4480
ppearl@spilmanlaw.com