IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE:  DAILY GAZETTE COMPANY, *et al.*, | Case No. 2:18-bk-20028 |
| | (Jointly Administered) |
| Debtors. | Chapter 11 |

### REPLY OF MEDIANEWS GROUP, INC. AND CHARLESTON PUBLISHING COMPANY IN SUPPORT OF THEIR OBJECTION TO DEBTORS' MOTION FOR AUTHORITY TO DISBURSE NET SALE PROCEEDS

Now come MediaNews Group, Inc. ("MediaNews") and Charleston Publishing Company ("CPC"), by counsel, and for their reply to (a) the Debtors' *Response* [Doc. 172], and (b) United Bank's *Response* [Doc. 173] to the *Objection* of MediaNews and CPC [Doc. 170] (the "Objection") to the Debtors' *Motion for Authority to Disburse Net Sale Proceeds* [Doc. 152] (the "Disbursement Motion"), state the following:

1.  Contrary to the Debtors' position, these Chapter 11 cases were filed and have been run primarily to benefit United Bank.  If the Debtors' assets were not sold pursuant to a section 363 sale, free and clear of liens and interests, there would not have been **any** bids anywhere close to the Stalking Horse bid in this case.  The Debtors' business would have gone into receivership under state law, and continued publication of the Gazette Mail would almost certainly have ceased.  By marshaling the powers given to debtors in bankruptcy, including priority skipping distributions to select unsecured creditors, a sale of the Debtors' assets as a going concern has been achieved. However, it is simply improper to invoke the bankruptcy laws, including the power to make priority skipping distributions to preserve the going concern value

of the Debtors' assets, without setting aside some value for the benefit of disfavored creditors. See, Czyzewski v. Jevic Holding Corp., 137 S. Ct. 973, 985-86, 197 L. Ed. 2d 398 (2017)

2. On March 16, 2018, Debtors filed the Disbursement Motion, seeking an order authorizing Debtors to distribute the Net Sale Proceeds[1] to United Bank upon Closing.

3. United Bank correctly states in its Response that the only issue before this Court is whether the Debtors may distribute all of the Net Sale Proceeds to United Bank upon Closing. See, United's Response, ¶ 4.

4. MediaNews and CPC do not object to the Sale, which was authorized in this Court's order entered on March 12, 2018, approving the sale of substantially all of the Debtors' assets to HD Media pursuant to the HD Media APA (the "Sale Order") [Doc. 141].  Nor do MediaNews and CPC take issue with the fact that it appears that value has been optimized.  All this is beside the point: without invoking Chapter 11, and forcing the participation of all unsecured creditors in this process, no third party would have offered anything close to the Stalking Horse bid, much less the enhanced bid that was achieved from HD Media, without the extraordinary power of a section 363 sale.

5. MediaNews and CPC are not attempting to delay Closing and do not object to the payment of Closing Costs and Remaining Debtor Obligations from the Closing Cash at Closing.  MediaNews and CPC have no desire to make this case any more complicated or expensive than it needs to be.

6. However, MediaNews and CPC do adamantly object to the payment of all Net Sale Proceeds to United Bank at tomorrow's Closing.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Disbursement Motion.

2

7. When the Debtors moved for approval of and procedures for the sale of substantially all of the Debtors' assets [Doc. 11] (the "Sale Motion"), the Debtors represented that the business justification for the Sale was that it would maximize the return for all creditors.[2] Sale Motion, ¶¶ 11, 29-30. The Sale Motion did not address how proceeds from the Sale would be distributed or used to further a Chapter 11 plan.

8. Similarly, the Sale Order authorized the Sale, but did not address distribution of proceeds. In the Sale Order, this Court found that "consummation of the Sale is necessary both to preserve and maximize the value of the Debtors' assets for the benefit of the Debtors, their estates, their creditors, and all other parties in interest in the Chapter 11 Cases, and to provide the means for the Debtors to maximize creditor recoveries." Sale Order, Section IX. A.

9. Until the Debtors filed the Disbursement Motion on March 16, 2018, the Debtors had not indicated their proposed distribution of Sale proceeds and, in fact, had signaled that they intended the Sale to benefit **all** creditor constituencies. It was not until the Disbursement Motion that Debtors requested authority to distribute all of the Net Sale Proceeds to United Bank.

10. The Debtors have structured their pleadings throughout this case in order to avoid raising red flags and to circumvent the reality that they are using Chapter 11 of the Bankruptcy Code for a non-reorganizational purpose. Even though the Closing of the Sale is scheduled to occur tomorrow, the Debtors have yet to articulate what they propose as a final disposition of this Chapter 11 case: a liquidating plan, conversion to a case under Chapter 7 or dismissal. Debtors are intentionally not addressing what will be the ultimate disposition of this case, and that makes the proposed distribution to United Bank unacceptable at this time.

---

[2] Contrary to the argument now raised by the Debtors and United in their Responses, at no time had the Debtors ever indicated that the proceeds from the Sale would only benefit those creditors who were creditors of the certain Debtors whose assets were being sold pursuant to the Sale.

11.      Although the Debtor and United both refute that this case is being used for the sole purpose of liquidating assets for the benefit of United, the facts before this Court make clear that this Chapter 11 proceeding is only serving to add value to United's collateral and incent the sale of the Debtors' assets.  United admits in its response that "the original bidder . . . requested that the sale be conducted through a Chapter 11 proceeding."  United's Response, ¶ 15.  Based on this admission, the facts before this Court are now even more closely aligned with In re Encore Healthcare Assocs., 312 B.R. 52 (Bankr. E.D. Pa. 2004), in which the debtor filed a petition for relief under Chapter 11 at the request of the purchaser of substantially all of the debtors' assets.  As in this case, all of the proceeds from the sale were going to be used to pay closing costs and the secured creditor.  Accordingly, the Court in Encore found that the sole purpose of the sale was to liquidate assets for the benefit of the secured creditor, so held that there was no business justification for the proposed sale of essentially all of the debtor's assets for one secured creditor.  Id.

12.      In this case, when the Debtors filed their Sale Motion, they stated the business justification for the Sale being the benefit to all creditors and parties in interest, and this Court granted the Sale Motion on that basis.  However, in the pending Disbursement Motion, the Debtors seek authorization for a distribution of Net Sale Proceeds to only one (1) creditor, negating the business justification stated in the Sale Motion.  Accordingly, the Debtors' Disbursement Motion should be denied as being contrary to the intentions of the Sale Motion, as approved in the Sale Order.

13.      In its Response, United argues that it is entitled to receive all of the Net Sale Proceeds and relies upon the finality of the post-petition financing order entered on March 12, 2018 [Doc. 140] ("DIP Order") as its basis for claiming that there has been a final determination

that United has a properly perfected lien, not subject to challenge. See, United's Response, ¶ 8. The DIP Order is final as to the issues regarding post-petition financing, and to the extent that United advanced post-petition funds to the Debtors based on the DIP Order, then United's lien, to that extent, is not subject to challenge. However, the DIP Order is not a final order as to all circumstances. Stated another way, the DIP Order is not a final adjudication as to whether United's lien is property perfected and no longer subject to challenge, with respect to the distribution of Net Sale Proceeds.

14. Accordingly, disbursement of all Net Sale Proceeds to United Bank at Closing, tomorrow, is improper, premature and should be determined in the context of either (a) a Plan of Liquidation or (b) a case converted to a proceeding under Chapter 7 of the Bankruptcy Code, so that a Chapter 7 Trustee can oversee the distribution and determine if United Bank's lien is properly perfected and entitled to priority, for purposes of the distribution of net proceeds

15. Similarly, both the Debtor and United raise in their responses the extent to which MediaNews and CPC's claim would be enforceable. The extent, validity and enforceability of MediaNews and CPC's claim are not at issue before the Court today. Moreover, consideration of any of the unsecured parties' claims at this point is premature because the deadline for filing Proofs of Claim is not until May 30, 2018. Finally, the Objection makes clear that it is being made on behalf of all unsecured creditors, not just MediaNews and CPC.

16. Nevertheless, the Debtor and United Bank ask this Court to make the determination - today - that United Bank is entitled to receive <u>all</u> of the Net Sale Proceeds at Closing, which is scheduled for tomorrow. The urgency relied upon by the Debtor and United Bank is simply United Bank's desire to have the Net Sale Proceeds in-hand within the first-quarter of 2018 for reporting purposes. While that is an understandable goal for United Bank, it

is not a justification for this Court to discard protections afforded to creditors by Chapter 11 of the Bankruptcy Code.

17. Chapter 11 of the Bankruptcy Code incorporates the safeguards of disclosure, voting, acceptance and confirmation of a plan. These protections are intended to benefit all creditors, not just those with "inside influence or economic leverage." See, H.R. REP. 103-835, 33, 1994 U.S.C.C.A.N. 3340, 3341. Just as there must be a business justification for the sale of assets pursuant to Section 363, there must similarly be a justification for the disbursement of sale proceeds "other than appeasement of [a] major creditor[ ]." See, In re Lionel Corp., 722 F.2d 1063, 1069-70 (2d Cir. 1983). By filing these Cases, the Debtors have forced the participation of all of their creditors. As every one of the Debtors' creditors has participated in this case they are entitled to the protections afforded in Chapter 11 of the Bankruptcy Code.

18. For all of the foregoing reasons and for the reasons more fully set forth in the Objection, MediaNews and CPC object to the Disbursement Motion on their own behalf and on behalf of all of the unsecured creditors in this case. No creditors' committee was organized in this case, so the unsecured creditors have had no voice, bargaining power or opportunity to participate in the Debtors' orchestration of the Sale and negotiations for disbursement of the Sale proceeds.

19. In conclusion, although the purpose stated and relied upon by Debtors for the relief they have requested from this Court throughout these proceedings has been maximizing recovery for all creditors and stakeholders (plural), the Debtors now ask this Court to approve a distribution of assets that will "swallow up Chapter 11's safeguard" for all of the remaining creditors. See, Lionel, 722 F.2d at 1069. Debtors' Disbursement Motion will "short circuit the

requirements of Chapter 11" (see, Braniff, 700 F.2d at 940), is in opposition to the objectives of the bankruptcy system, and therefore should be denied.

WHEREFORE, MediaNews Group, Inc. and Charleston Publishing Company respectfully request that this Court enter an order denying the Debtors' Disbursement Motion; ordering that the Net Sale Proceeds be held in a reserve account pending distribution through a Chapter 11 plan or a Chapter 7 liquidation; and granting such other and further relief as justice requires.

**MEDIANEWS GROUP, INC.
AND CHARLESTON PUBLISHING COMPANY,**

By Counsel:

/s/  Steven L. Thomas
Steven L. Thomas (WVSB #3738)
Thomas H. Ewing (WVSB #9655)
Courtney A. Kirtley (WVSB #9414)
Kay Casto & Chaney PLLC
P.O. Box 2031
Charleston, West Virginia 25327
Tel:  (304) 345-8900
Fax:  (304) 345-8909
sthomas@kaycasto.com
tewing@kaycasto.com
ckirtley@kaycasto.com

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

In Re:  DAILY GAZETTE COMPANY,      Case No. 2:18-bk-20028

Debtor.     Chapter 11

## CERTIFICATE OF SERVICE

I do hereby certify that on **March 29, 2018**, I filed the foregoing *Reply of MediaNews Group, Inc. and Charleston Publishing Company in Support of Their Objection to Debtors' Motion for Authority to Disburse Net Sale Proceeds* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following participants:

> Richard Neely, Esq.
> Neely & Callaghan
> 159 Summers Street
> Charleston, WV  25301
>   *Counsel for Debtor*
>
> Joe M. Supple, Esq.
> Supple Law Office, PLLC
> 801 Viand Street
> Point Pleasant, WV 25550
>
> - and -
>
> Brian A. Audette, Ill. Bar No. 66277056
> Perkins Coie, LLP
> 131 S. Dearborn St., Suite 1700
> Chicago, IL 60603
>   *Co-Counsel for Debtor*
>
> James S. Crockett, Jr., Esq.
> Spilman Thomas & Battle, PLLC
> P.O. Box 273
> Charleston, West Virginia 25321-0273
>
> - and -

Peter M. Pearl, Esq.
Spilman Thomas & Battle, PLLC
P. O. Box 90
Roanoke, Virginia 24002
   *Counsel for United Bank*

Marc S. Pfeuffer, Esq.
Pension Benefit Guaranty Corporation
Office of the General Counsel
1200 K Street NW, Suite 340
Washington, DC  20005
   *Counsel for Pension Benefit Guaranty Corporation*

Arthur M. Standish, Esq.
Sarah C. Ellis, Esq.
Evans L. King, Jr., Esq.
Steptoe & Johnson PLLC
P.O. Box 1588
Charleston, WV  25326-1588
   *Counsel for Charleston Newspapers, LLC*

Craig L. Selby
1419 Nottingham Road
Charleston, WV  25314

Ezra H. Cochran
6664 S.E. 55th Street
Okeechobee, FL  34974-2542

       /s/  Steven L. Thomas
       Steven L. Thomas (WVSB #3738)
       Kay Casto & Chaney PLLC
       P. O. Box 2031
       Charleston, WV  25327
       sthomas@kaycasto.com