# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Daily Gazette Company, *et al.*, | ) | Case No. 18-20028 |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |

## DEBTORS' APPLICATION TO RETAIN
## BROWN EDWARDS & COMPANY, L.L.P. AS ACCOUNTANTS

Daily Gazette Company, and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), hereby apply (this "Application"), pursuant to sections 327 and 328 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order authorizing the Debtors to retain and employ Stephen E. Kawash and the accounting firm Brown Edwards & Company, L.L.P. ("BEC") as the Debtors' accountants, and state as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding under 28 U.S.C. § 157(b), and the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's taxpayer identification number are as follows: Daily Gazette Company (4480); Daily Gazette Holding Company, LLC (2981); Charleston Newspapers Holdings, L.P. (3028); Daily Gazette Publishing Company, LLC (3074); Charleston Newspapers (6079); and G-M Properties, Inc. (4124).

139353274.1

4. The statutory bases for the relief requested herein is sections 327 and 328 of the Bankruptcy Code and Bankruptcy Rule 2014.

## BACKGROUND

### A. Chapter 11 Filings And The Debtors' Business

5. On January 30, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief with the Court under chapter 11 of the Bankruptcy Code. No trustee, examiner or creditors' committee has been appointed in these Chapter 11 Cases.

6. Prior to the Court-approved sale of their business and assets, the Debtors collectively operated privately owned information and entertainment businesses consisting of the flagship newspaper, The Charleston Gazette-Mail, as well as a related website, weekly publications, a saturation mail product and the following verticals: www.wvcarfinder.com; www.wvrealestatefinder.com; www.wvjobfinder.com; and www.gazettemailclassifieds.com. As of the Petition Date, the Debtors employed, collectively, approximately 210 people, approximately 170 of which are full-time employees and 40 of which are part-timers.

### B. The Sale Process

7. On the Petition Date, the Debtors filed Debtors' Motion Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code for: (I) an Order (A) Approving and Authorizing Bidding Procedures in Connection with the Sale of Substantially all of the Debtors' Assets, (B) Approving and Authorizing the Break-Up Fee, (C) Scheduling the Related Auction and Hearing to Consider Approval of the Sale, (D) Approving Procedures Related to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (E) Approving the Form and Manner of Notice Thereof, and (F) Granting Related Relief; and (II) An Order (A) Authorizing the Sale of Substantially all the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (B) Authorizing and Approving the Debtors' Performance Under the Asset

Purchase Agreement, (C) Approving the Assumption and Assignment of Certain of the Debtors' Executory Contracts and Unexpired Leases Related Thereto, and (D) Granting Related Relief.

8. On February 1, 2018, the Court entered the Order (A) Approving and Authorizing Bidding Procedures in Connection with the Sale of Substantially all the Debtors' Assets, (B) Approving and Authorizing the Break-Up Fee, (C) Scheduling the Related Auction and Hearing to Consider Approval of the Sale, (D) Approving Procedures Related to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (E) Approving the Form and Manner of Notice Thereof, and (F) Granting Related Relief (the "Bid Procedures Order"). Among other things, the Bid Procedures Order provided that: (a) competing bids were due by March 6, 2018; (b) to the extent any competing bids were received, the Debtors would conduct an auction (the "Auction") for the sale of their assets on March 8, 2018; and (c) the hearing to approve the sale of the Debtors' assets would be held on March 9, 2018.

9. On March 6, 2018, the Debtors received a competing bid for the acquisition of their assets from HD Media Company, LLC ("HD Media") pursuant to the terms of an asset purchase agreement (the "HD Media APA") that included a gross purchase price of $11,487,243 (the "Purchase Price"). Prior to the Auction, the Stalking Horse Bidder informed the Debtors that it did not wish to increase its bid or participate in the Auction. Accordingly, at the Auction on March 8, 2018, the Debtors named HD Media as the successful bidder pursuant to the HD Media APA.

10. On March 12, 2018, the Court entered the Order (A) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of all Liens, Claims, Encumbrances, and Other Interests, (B) Authorizing and Approving the Debtors' Performance Under the Asset Purchase Agreement, (C) Approving the Assumption and Assignment of Certain of the Debtors'

Executory Contracts and Unexpired Leases Related Thereto, and (D) Granting Related Relief (the "Sale Order"). Among other things, the Sale Order approved the HD Media APA.

11.     On March 30, 2018, the Debtors and HD Media's designee, ETBN Group, LLC, closed pursuant to the terms and conditions of the HD Media APA.

## RELIEF REQUESTED

12.     By this Application, the Debtors request the entry of an order authorizing them to employ and retain BEC as their accountants to perform certain tax and accounting services that will be required and necessary during these cases.

## BASIS FOR RELIEF REQUESTED

13.     Effective as of January 1, 2018, the accounting firms of Brown Edwards and Gibbons & Kawash merged, which resulted in the formation of BEC. Stephen E. Kawash and Gibbons & Kawash had provided tax and accounting services to the Debtors for more than 20 years prior to the Petition Date, and Stephen E. Kawash and BEC continued to provide such services following the merger described herein. Accordingly, Stephen E. Kawash and BEC are intimately familiar with the Debtors' business and financial affairs and well-suited to provide the Debtors with necessary tax and accounting services. Indeed, the Debtors have requested, and BEC has agreed, to provide the Debtors with accounting services pursuant to the terms and conditions of the engagement letter (the "Engagement Letter") attached hereto as Exhibit A. In particular, BEC anticipates preparing and filing the Debtors' applicable tax returns for the years 2017 and 2018.

14.     To the best of the Debtors' knowledge, and except as may otherwise be disclosed herein or in the Declaration of Stephen E. Kawash in Support of Debtors' Application to Retain Brown Edwards & Company, L.L.P. as Accountants (the "Kawash Declaration"), a copy of which is attached hereto as Exhibit B, BEC: (a) does not have any connection with the Debtors,

the Debtors' officers and directors, the Debtors' shareholders, and certain entities holding large claims against or interests in the Debtors that were made known to BEC; (b) is a "disinterested persons" as that term is defined in section 101(14) of the Bankruptcy Code; and (c) does not hold or represent any interest adverse to the Debtors' estates.

15. As set forth in the Kawash Declaration, BEC holds an unsecured claim of approximately $65,000 for tax and accounting services provided to the Debtors prior to the Petition Date. However, as is also set forth in the Kawash Declaration, upon BEC's retention pursuant to Court order in these Chapter 11 Cases, BEC will waive such claim and any other claim that it might have relating to services provided to the Debtors prior to the Petition Date.

16. Accordingly, to the best of the Debtors' knowledge and except as may be set forth herein or in the Kawash Declaration:

    (a) neither Stephen E. Kawash nor BEC holds or represents an adverse interest to any Debtor's estate;

    (b) upon waiver of its pre-petition claims, BEC will not be a "creditor" of any Debtor;

    (c) neither Stephen E. Kawash nor BEC has ever been a director, officer, employee or insider of any Debtor; and

    (d) BEC does not have an interest materially adverse to the interest of any Debtor's estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in any Debtor, or for any other reason.

17. In light of the foregoing, the Debtors believe that BEC is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code.

18. As set forth in the Engagement Letter, (a) BEC's standard hourly rates are $115 for associates, $135 for managers, $245 for directors and $355 for partners, (b) BEC has estimated that its services will cost approximately $30,000, and (c) BEC has agreed and

acknowledged that its compensation is subject to Court approval. The Debtors submit that the terms of the Engagement Letter, including the hourly rates identified therein, are fair, reasonable and customary in the industry.

19. The Debtors submit that the retention and employment of BEC as their accountants in these Chapter 11 Cases is necessary to ensure that the Debtors can comply with their applicable tax reporting requirements. Accordingly, the Court should grant this Application and approve the Debtors' employment of BEC.

WHEREFORE, the Debtors respectfully request the entry of an order authorizing them to retain and employ BEC pursuant to the terms and conditions of the Engagement Letter and granting such other and further relief as is just.

Dated: April 13, 2018

**PERKINS COIE LLP**

By: /s/ *Brian A. Audette*
Brian A. Audette (IL Bar No. 6277056)
(Admitted Pro Hac Vice)
131 S. Dearborn St., Suite 1700
Chicago, IL 60603
Telephone: 312.324.8534
baudette@perkinscoie.com

-and-

Joe M. Supple, Bar. No. 8013
SUPPLE LAW OFFICE, PLLC
801 Viand St.
Point Pleasant, WV 25550
Telephone: 304.675.6249
joe.supple@supplelaw.net

*Co-Counsel to the Debtors and Debtors in Possession*

139353274.1