### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Daily Gazette Company, *et al.*, | ) | Case No. 18-20028 |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |

### DEBTORS' MOTION TO APPROVE (A) RETENTION OF AUCTIONEER AND (B) SALE OF REAL ESTATE

Daily Gazette Company, and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases, hereby move (this "Motion"), pursuant to sections 327, 328 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 6004-1, for the entry of an order (a) authorizing the retention of Greenway's Real Estate & Auction, Inc. ("Auctioneer") as auctioneer and (b) approving the sale of certain vacant real estate owned by Debtor Daily Gazette Company ("DGC"), and state as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding under 28 U.S.C. § 157(b), and the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors and the last four digits of each Debtor's taxpayer identification number are as follows: Daily Gazette Company (4480); Daily Gazette Holding Company, LLC (2981); Charleston Newspapers Holdings, L.P. (3028); Daily Gazette Publishing Company, LLC (3074); Charleston Newspapers (6079); and G-M Properties, Inc. (4124).

141144331.1

4.  The statutory bases for the relief requested herein are sections 327, 328 and 363 of the Bankruptcy Code, Bankruptcy Rules 2014 and 6001 and Local Rule 6004-1.

## BACKGROUND

A.  **Chapter 11 Filings And The Debtors' Business**

5.  On January 30, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief with the Court under chapter 11 of the Bankruptcy Code. No trustee, examiner or creditors' committee has been appointed in these cases.

6.  Prior to the Court-approved sale of their business and assets, the Debtors collectively operated privately owned information and entertainment businesses consisting of the flagship newspaper, The Charleston Gazette-Mail, as well as a related website, weekly publications, a saturation mail product and the following verticals: www.wvcarfinder.com; www.wvrealestatefinder.com; www.wvjobfinder.com; and www.gazettemailclassifieds.com. As of the Petition Date, the Debtors employed, collectively, approximately 210 people, approximately 170 of which are full-time employees and 40 of which are part-timers.

B.  **The Sale Of The Debtors' Business And Assets**

7.  On March 12, 2018, the Court entered an Order (A) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (B) Authorizing and Approving the Debtors' Performance Under the Asset Purchase Agreement, (C) Approving the Assumption and Assignment of Certain of the Debtors' Executory Contracts and Unexpired Leases Related Thereto, and (D) Granting Related Relief [Dkt. #141] (the "Sale Order"). But for the parcel of real estate that is the subject of this Motion and which is described in more detail below, the Sale Order approved the sale of the Debtors' business and substantially all of their assets (collectively, the "Operating Assets") to HD Media Company, LLC ("HD Media") or its designee.

8.    On March 30, 2018, the Debtors and HD Media's designee, ETBN Group, LLC, closed on the sale of the Operating Assets. Since that time, the Debtors have been engaged in an orderly wind-down as described in more detail in Debtor's Motion for Authority to Disburse Net Sale Proceeds [Dkt. #152].

**C.    The Timberline Real Estate**

9.    The Operating Assets that were the subject of the Sale Order did not include certain unimproved real property in Dry Fork District, Tucker County, West Virginia, which is commonly known as Tract No. 38 in Deer Ridge Section of Timberline Sub-Division and which is owned by DGC (the "Timberline Real Estate"). The Timberline Real Estate is encumbered by a lien in favor of the Pension Benefit Guaranty Corporation ("PBGC") in the amount of $1,627,808.00 (the "PBGC Lien"). The PBGC Lien is evidenced by certain Notices of Federal Lien under I.R.C. §§ 412(n) and/or 430(k) filed by the PBGC in July 2015, October 2015, February 2016, May 2016, and June 2016, copies of which are attached to the proof of claim filed by the PBGC against DGC, which was designated as Claim No. 10 (the "PBGC Claim") and which is attached hereto as **Exhibit A**. The Timberline Real Estate represents the only remaining asset of the Debtors' estates. Moreover, the Debtors are not aware of any other liens, claims or encumbrances against the Timberline Real Estate.

**D.    The Auctioneer's Retention And Proposed Sale Of The Timberline Real Estate**

10.    As part of their efforts to wind-down in an orderly fashion, the Debtors have elected to sell the Timberline Real Estate pursuant to an auction. In that regard, the Debtors have selected Auctioneer to market and sell at auction the Timberline Real Estate. With locations in Covington, Virginia and Lewisburg, West Virginia, Auctioneer has extensive experience marketing real estate and conducting auctions and is familiar with the Timberline Real Estate and the market in which

it is located. Accordingly, the Debtors believe that Auctioneer is well-equipped to market and sell the Timberline Real Estate on DGC's behalf.

11. The Debtors have consulted extensively with Auctioneer and are informed and believe that a sale of the Timberline Real Estate pursuant to an auction will fetch the highest and best price within a reasonable time. Indeed, the Debtors are informed and believe that it would be impractical for the them to merely list the Timberline Real Estate for sale with a broker and hope for a purchaser to emerge, as owners of similarly situated vacant parcels of real estate in the area have been unsuccessful in such sale efforts.

12. Moreover, the Debtors have consulted with the PBGC and the PBGC is supportive of the Debtors' engagement of Auctioneer and proposed sale of the Timberline Real Estate, provided that, as discussed below, a "reserve" price is met. Since the Timberline Real Estate is believed to be worth far less than the amount of the PBGC Lien, the PBGC has agreed to the Debtors' proposed sale, to release its lien upon closing, and to permit the sale proceeds to be used to pay for the costs of sale, including Auctioneer's compensation described below and the Debtors' reasonable attorneys' fees and costs incurred in pursuing this Motion and selling the Timberline Real Estate.[2]

## RELIEF REQUESTED

13. By this Motion, the Debtors request the entry of an order: (a) authorizing them to (i) retain Auctioneer to market and sell the Timberline Real Estate pursuant to the terms and conditions of an Auction Listing Agreement dated as of August 9, 2018 by and between DGC and Auctioneer (the "Auction Agreement")[3] and (ii) pay Auctioneer its compensation described in the Auction Agreement without any further Court order; and (b) authorizing and approving (i) the sale

---

[2] Such attorneys' fees and costs shall remain subject to Court approval.
[3] A true and correct copy of the Auction Agreement is attached hereto as **Exhibit B**.

141144331.1

of the Timberline Real Estate to the winning bidder at an auction free and clear of all liens, claims, encumbrances and interests, and (ii) the payment of net sale proceeds to the PBGC upon closing.

## BASIS FOR RELIEF REQUESTED

**A.     The Court Should Approve The Auctioneer's Retention And Compensation**

14.     As set forth above, the Debtors believe that Auctioneer has the skill and expertise necessary to market and sell the Timberline Real Estate. The Debtors also believe that the terms of the Auction Agreement are market-based and fair and reasonable under the circumstances. Pursuant to the Auction Agreement, Auctioneer will handle all aspects of the Timberline Real Estate's marketing and conduct all aspects of the auction. The Auction Agreement provides that Auctioneer is entitled to a single, non-refundable $1,500 payment to reimburse it for all marketing expenses (the "Expense Payment") and, in lieu of a traditional commission, Auctioneer will charge and receive a "Buyer's Premium" in the amount of ten percent (10%) of the sale price (the "Buyer's Premium" and, together with the Expense Payment, the "Auctioneer Compensation").

15.     Although the Auction Agreement provides that the auction shall take place on September 29, 2018, the auction will not occur on that date, but rather will likely occur by the end of October, 2018, to provide Auctioneer with sufficient time to market the Timberline Real Estate. Indeed, Auctioneer has already initiated preparations for the auction and commenced marketing efforts. Moreover, the Auction Agreement further provides for a reserve, which amount must be met to convey title to the Timberline Real Estate. The PBGC requested such a reserve to ensure that the real estate would not be conveyed for an unreasonably low purchase price. The Debtors have redacted the reserve amount from the Auction Agreement that is attached to this Motion to avoid the public and potential buyers from discovering it.

16.     The Debtors request that they be authorized to pay the Auctioneer Compensation without any further Court order. Section 328(a) of the Bankruptcy Code provides, in relevant part,

141144331.1

that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 328 of the Bankruptcy Code permits the compensation of professionals, including brokers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d at 862 (internal citations and emphasis omitted).

17. The Debtors submit that the Auctioneer Compensation is consistent with Auctioneer's normal and customary fee arrangements for auctions of this size and that the Auctioneer Compensation is market-based and fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

18. Moreover, as set forth in more detail in the Declaration of Tommy Garten, a copy of which is attached hereto as **Exhibit C**, Auctioneer is disinterested and eligible to be retained by the Debtors. Indeed, Auctioneer is not a creditor of any of the Debtors and does not hold or represent any interest adverse to the Debtors' estates. *See* Ex. C.

19. Accordingly, the Court should approve Auctioneer's retention pursuant to the terms of the Auction Agreement and the Auctioneer Compensation without further Court order.

**B.  The Court Should Approve The Auction And Sale Of Timberline Real Estate**

20. Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A sale of a debtor's assets pursuant to section 363(b) of the Bankruptcy Code is permissible when "a sound business justification exists." *In re Daufuskie Island Props., LLC*, 431 B.R. 626, 638-39 (Bankr. D. S.C. 2010). The "business purpose" test is satisfied if:

> (1) a sound business reason or emergency justifies a pre-confirmation sale; (2) a sale has been proposed in good faith; (3) adequate and reasonable notice of the sale has been provided to parties-in-interest; and (4) the purchase price is fair and reasonable.

*Id.*

21. Here, a sound business reason exists for selling the Timberline Real Estate, as the Debtors are no longer operating, have no further use for such property, and are not deriving any income or other gain from the Timberline Real Estate. Moreover, the Debtors are proposing the sale in good faith and to maximize the value of the Timberline Real Estate within a reasonable amount of time. Further, as set forth above, the Debtors are informed and believe that an auction to be conducted by Auctioneer is the only practical means by which to dispose of the Timberline Real Estate, as buyers are less likely to emerge if the Debtors merely list the property for sale at a pre-established price. Therefore, in an exercise of their sound business judgment, the Debtors submit that they will be able to maximize the value of the Timberline Real Estate if it is sold by Auctioneer pursuant to an advertised auction.

22. Based upon the foregoing, the Debtors request that the Court approve the proposed auction and sale of the Timberline Real Estate to the winning bidder to be identified following the conclusion of the auction, and to authorize disbursement of the net sale proceeds to the PBGC upon closing without further order of Court.

**C.     Relief From Bankruptcy Rule 6004(h)**

23. Under Bankruptcy Rule 6004(h), unless the Court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen days after entry of the order. Here, to minimize the continuing costs of administering and preserving the Debtors' estates and the Timberline Real Estate, the Debtors request that the Court waive the fourteen-day stay period under Bankruptcy Rule 6004(h).

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order approving: (a) the Debtors' retention of the Auctioneer pursuant to the terms and conditions of the Auction Agreement; and (b) the sale of the Timberline Real Estate to the winning bidder following an auction free and clear of all liens, claims, encumbrances and other interests.

Dated:  September 20, 2018

**PERKINS COIE LLP**

By: /s/ *Brian A. Audette*
Brian A. Audette (IL Bar No. 6277056)
(Admitted Pro Hac Vice)
131 S. Dearborn St., Suite 1700
Chicago, IL 60603
Telephone: 312.324.8534
baudette@perkinscoie.com

-and-

Joe M. Supple, Bar. No. 8013
SUPPLE LAW OFFICE, PLLC
801 Viand St.
Point Pleasant, WV 25550
Telephone: 304.675.6249
joe.supple@supplelaw.net

*Co-Counsel to the Debtors and Debtors in Possession*

141144331.1