# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Daily Gazette Company, | ) | Case No. 18-20028 |
| | ) | (Jointly Administered) |
| Debtor.[1] | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Daily Gazette Holding Company, LLC, | ) | Case No. 18-20029 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Charleston Newspapers Holdings, L.P., | ) | Case No. 18-20030 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Daily Gazette Publishing Company, LLC, | ) | Case No. 18-20032 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Charleston Newspapers, | ) | Case No. 18-20033 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| G-M Properties, Inc, | ) | Case No. 18-20034 |
| | ) | |
| Debtor. | ) | |

---

[1] The last four digits of each Debtor's taxpayer identification number are as follows: Daily Gazette Company (4480); Daily Gazette Holding Company, LLC (2981); Charleston Newspapers Holdings, L.P. (3028); Daily Gazette Publishing Company, LLC (3074); Charleston Newspapers (6079); and G-M Properties, Inc. (4124).

144270861.2

## DEBTORS' MOTION TO DISMISS CHAPTER 11 CASES

Daily Gazette Company, and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases, hereby move (this "Motion"), pursuant to sections 105(a) and 1112 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 1017 and 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of orders dismissing their chapter 11 cases, and in support thereof state as follows:

## JURISDICTION AND VENUE

1.  The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2.  This is a core proceeding under 28 U.S.C. § 157(b), and the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4.  The statutory bases for the relief requested herein are sections 105 and 1112 of the Bankruptcy Code and Bankruptcy Rules 1017 and 2002.

## BACKGROUND

**A.     Chapter 11 Filings And The Debtors' Business**

5.  On January 30, 2018 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief with the Court under chapter 11 of the Bankruptcy Code. No trustee, examiner or creditors' committee has been appointed in these cases.

6.  Prior to the Court-approved sale of their business and assets (as described below), the Debtors collectively operated privately owned information and entertainment businesses consisting of the flagship newspaper, The Charleston Gazette-Mail, as well as a related website,

weekly publications, a saturation mail product and the following verticals: www.wvcarfinder.com; www.wvrealestatefinder.com; www.wvjobfinder.com; and www.gazettemailclassifieds.com. As of the Petition Date, the Debtors employed, collectively, approximately 210 people, approximately 170 of which were full-time employees and 40 of which were part-timers.

**B.     Cash Collateral And Debtor-In-Possession Financing**

7.     On the Petition Date, the Debtors filed Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Obtain Postpetition Financing with Priority Over Certain Administrative Expenses and Secured by Liens on Property of the Estate Pursuant to 11 U.S.C. § 364, (II) Authorizing Debtors to Use Cash Collateral and Other Collateral and Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief [Dkt. #10].

8.     On February 1, 2018, the Court entered the Interim Order (I) Authorizing Debtors to Obtain Postpetition Financing with Priority Over Certain Administrative Expenses and Secured by Liens on Property of the Estate Pursuant to 11 U.S.C. § 364, (II) Authorizing Debtors to Use Cash Collateral and Other Collateral and Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief [Dkt. #39].

9.     On March 12, 2018, the Court entered the Final Order (I) Authorizing Debtors to Obtain Postpetition Financing with Priority Over Certain Administrative Expenses and Secured by Liens on Property of the Estate Pursuant to 11 U.S.C. § 364, (II) Authorizing Debtors to Use Cash Collateral and Other Collateral and Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief [Dkt. #140].

10. Pursuant to the final order, the Court found and/or ordered, *inter alia*, that: (a) the Debtors acknowledged and agreed that as of the Petition Date, the principal balance due to the Debtors' secured lender, United Bank, was $15,659,437.09, plus interest, fees, charges and costs of collection, including attorneys' fees (collectively, the "Pre-Petition Indebtedness"); (b) the Pre-Petition Indebtedness was secured by all tangible and intangible personal property owned by the Debtors and, but for certain undeveloped real estate owned by Daily Gazette Company, all of the Debtors' real property; (c) the Debtors were authorized to use United Bank's cash collateral to sustain post-petition operations pursuant to a budget; (d) United Bank shall have a continuing lien and security interest in the Debtors' post-petition assets; and (e) the Debtors were authorized to borrow up to $400,000 from United Bank in the form of debtor-in-possession financing.[2] Throughout the course of the Debtors' chapter 11 cases, they were able to operate by using cash collateral and did not borrow any additional funds from United Bank.

**C.    The Going-Concern Sale**

11. On the Petition Date, the Debtors filed Debtors' Motion Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code for: (I) an Order (A) Approving and Authorizing Bidding Procedures in Connection with the Sale of Substantially all of the Debtors' Assets, (B) Approving and Authorizing the Break-Up Fee, (C) Scheduling the Related Auction and Hearing to Consider Approval of the Sale, (D) Approving Procedures Related to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (E) Approving the Form and Manner of Notice Thereof, and (F) Granting Related Relief; and (II) An Order (A) Authorizing the Sale of Substantially all the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (B) Authorizing and Approving the Debtors' Performance Under the Asset

---

[2] The interim and final cash collateral and financing orders also permitted creditors 45 days from the date United Bank filed its proof of claim within which to object to United Bank's claim or the extent, validity, priority or perfection of United Bank's liens. No such objections were filed.

Purchase Agreement, (C) Approving the Assumption and Assignment of Certain of the Debtors' Executory Contracts and Unexpired Leases Related Thereto, and (D) Granting Related Relief [Dkt. #11].

12. On February 7, 2018, the Court entered the Order (A) Approving and Authorizing Bidding Procedures in Connection with the Sale of Substantially all the Debtors' Assets, (B) Approving and Authorizing the Break-Up Fee, (C) Scheduling the Related Auction and Hearing to Consider Approval of the Sale, (D) Approving Procedures Related to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (E) Approving the Form and Manner of Notice Thereof, and (F) Granting Related Relief [Dkt. #63].

13. On March 8, 2018, the Debtors conducted an auction for the sale of their business and assets and HD Media Company, LLC ("HD Media") was the winning bidder, having submitted a bid with a gross purchase price of $11,487,243, which was subject to, among other things, a certain post-closing working capital adjustment (the "Working Capital Adjustment"). Moreover, in connection with the Working Capital Adjustment, the Debtors were required to reserve in escrow $325,000 of the purchase price (the "Working Capital Reserve") so that funds would be available to be repaid to HD Media in the event the Working Capital Adjustment was resolved in HD Media's favor.

14. On March 12, 2018, the Court entered the Order (A) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (B) Authorizing and Approving the Debtors' Performance Under the Asset Purchase Agreement, (C) Approving the Assumption and Assignment of Certain of the Debtors' Executory Contracts and Unexpired Leases Related Thereto, and (D) Granting Related Relief [Dkt. #141].

5

15. On March 30, 2018, the Debtors and HD Media's designee, ETBN Group, LLC ("ETBN"), closed the sale of the Debtors' business and assets (the "Business Sale"). Following such closing, in approximately August 2018, the Debtors and ETBN resolved the Working Capital Adjustment, which resulted in ETBN's payment to Debtors of an additional $175,000, which funds, along with the Working Capital Reserve, were paid, pursuant to the Court's authorization to disburse net sale proceeds (described below), to United Bank since no additional funds were owed back to ETBN. Consequently, the Working Capital Reserve was likewise transferred to United Bank since no additional funds were owed back to ETBN. The Business Sale disposed of all the Debtors' assets other than the Timberline Real Estate (defined below).

**D.    Disbursement Authority**

16. On March 16, 2018, the Debtors filed Debtors' Motion for Authority to Disburse Net Sale Proceeds [Dkt. #152] (the "Disbursement Motion"), pursuant to which the Debtors (a) requested the authority to disburse net Business Sale proceeds to United Bank upon closing, and (b) informed the Court and parties in interest that, following closing, the Debtors intended to wind-down their business and affairs pursuant to a budget attached to the Disbursement Motion as Exhibit A (the "Wind-Down Budget"), to be funded by certain Business Sale proceeds that United Bank agreed could be used for such purposes.

17. On March 30, 2018, the Court granted the Disbursement Motion pursuant to a Memorandum Opinion and Order [Dkt. #176]. Accordingly, the Business Sale proceeds described in the Disbursement Motion—less the funds necessary for the Wind-Down Budget—were paid to United Bank in connection with the Business Sale's closing.

**E.    The Timberline Sale**

18. As set forth above, the Sale to ETBN did not include certain unimproved real property owned by Daily Gazette Company in Dry Fork District, Tucker County, West Virginia,

which is commonly known as Tract No. 38 in Deer Ridge Section of Timberline Sub-Division (the "Timberline Real Estate").  United Bank did not have a lien on the Timberline Real Estate.  Rather, the property was encumbered by a lien in favor of the Pension Benefit Guaranty Corporation ("PBGC") in the amount of $1,627,808.

19. On September 20, 2018, the Debtors filed Debtors' Motion to Approve (A) Retention of Auctioneer and (B) Sale of Real Estate [Dkt. #256] (the "Timberline Sale Motion"), pursuant to which the Debtors requested authority to retain Greenway's Real Estate & Auction, Inc. ("Greenway's") to market and conduct an auction to sell the Timberline Real Estate, and for approval to sell the Timberline Real Estate to the winning bidder at auction.

20. On December 1, 2018, the Court entered the Order Authorizing Debtors' Retention of Auctioneer and Authorizing the Sale of Real Estate [Dkt. #284], pursuant to which the Court: (a) authorized the Debtor's to retain Greenway's to market and conduct an auction for the sale of the Timberline Real Estate; (b) authorized the Debtors' to compensate Greenway's for its services; (c) authorized the Debtors to transfer title to the Timberline Real Estate to the winning bidder at auction free and clear of all liens, claims, encumbrances and interests; (d) authorized the Debtors to pay reasonable and necessary costs associated with closing a sale; (e) authorized the Debtors to pay net sale proceeds to the PBGC after reserving for all reasonable attorneys' fees and costs incurred in connection with prosecuting the Timberline Sale Motion and closing the sale of the Timberline Real Estate.[3]

21. On November 17, 2018, Greenway's conducted an auction for the sale of the Timberline Real Estate and Hayward Phillips Jr. and Jane Phillips were the winning bidders with a bid of $37,500 (the "Timberline Sale").

---

[3] Although the Auction Sale Order was not actually entered on the docket until December 1, 2018, the Court indicated its intention to enter such order following a hearing on October 11, 2018.  See Dkt. #269.

144270861.2

22. On or about February 7, 2019, Daily Gazette Company closed on the sale of the Timberline Real Estate. After satisfying Greenway's fees and costs and other costs attendant to closing, the estate received sale proceeds in the amount of $34,728.03, $26,228.03 of which was paid to the PBGC and $8,500 of which was retained by the estate as an estimate of the legal fees and costs incurred by Daily Gazette Company in pursuing the sale of the Timberline Real Estate. As a result of the Timberline Sale and but for the aforementioned $8,500, the Debtors were left only with cash subject to United Bank's security interests and *no* other assets.

**F.    The Wind-Down**

23. Following the Business Sale, the Debtors began their wind-down process described in the Disbursement Motion. Most notably, to wind-down their business and affairs, the Debtors: (a) satisfied all administrative expense claims, including trade debts and employee obligations (but excluding professional fee claims not yet approved by the Court); (b) terminated or rolled over remaining employee benefits, including the Debtors' 401(k) plan and medical benefits;[4] (c) retained accountants to assist with dissolving the Debtors, auditing the Debtors' 401(k) plan and preparing the Debtors' 2017 and 2018 tax returns; (d) reconciled and resolved the Working Capital Adjustment; (e) disposed of the Timberline Real Estate; and (f) performed such other miscellaneous tasks necessary to efficiently and orderly wind-down. All receipts and disbursements of the Debtors are accurately reflected in the monthly operating reports filed with the Court. As of the date of this Motion, the Debtors have approximately $170,500 of cash on hand.

---

[4] In connection with the Debtors' termination and reconciliation of medical benefit claims, the Debtors' estates received a refund of approximately $10,500.00.

144270861.2

**G.     Professional Retention And Fee Applications**

24.     On March 9, 2018, the Court entered the Order Authorizing Debtors to Employ and Retain Perkins Coie LLP as Their Bankruptcy Co-Counsel [Dkt. #131].  On June 29, 2018, the Court entered an order [Dkt. #226] granting the first interim fee application of Perkins Coie LLP ("Perkins"), pursuant to which the Court approved, and Perkins was paid, fees in the amount of $219,941.86 and costs in the amount of $20,770.26 (the "Perkins Interim Fees & Costs").[5]  Contemporaneous herewith, Perkins filed its second and final fee application, pursuant to which it requests approval of the Perkins Interim Fees & Costs on a final basis and payment of additional fees and costs totaling $72,928.80.

25.     On March 9, 2018, the Court entered the Order Approving Application to Employ Supple Law Office, PLLC as Co-Counsel for the Debtors [Dkt. #130].  On June 29, 2018, the Court entered an order [Dkt. #227] granting the first interim fee application of Supple Law Office, PLLC ("Supple"), pursuant to which the Court approved, and Supple was paid, fees in the amount of $28,530.00 and costs in the amount of $775.08 (the "Supple Interim Fees & Costs").[6]  Supple has filed its second and final fee application, pursuant to which it requests approval of the Supple Interim Fees & Costs on a final basis and payment of additional fees and costs totaling $2,640.00.

26.     On May 29, 2018, the Court entered the Order Authorizing Debtors to Retain and Employ Brown Edwards & Company, L.L.P. as Accountants [Dkt. #208].  On July 7, 2018, the Court entered the Order Authorizing the Expansion of the Scope of the Debtors' Retention of Brown Edwards & Company, L.L.P. as Accountants [Dkt. #230].  Contemporaneous herewith,

---

[5] $29,712.12 of the Perkins Interim Fees & Costs was paid from a pre-petition retainer held by Perkins.

[6] $25,000 of the Supple Interim Fees & Costs was paid from a pre-petition retainer held by Supple.

the Debtors have filed the first and final fee application of Brown Edwards & Company, L.L.P. ("BEC"), pursuant to which the Debtors seek authority to compensate BEC $40,357.50.

## RELIEF REQUESTED

27.    By this Motion and for the reasons set forth herein, the Debtors request the entry of orders dismissing their respective chapter 11 cases.  The Debtors have filed this same Motion in each of their underlying chapter 11 cases and will upload separate proposed orders of dismissal for entry in each such case.  The Debtors further request that the Court refrain from entering dismissal orders until after the final fee applications described herein have been adjudicated and the Debtors have been permitted sufficient time to pay their professionals, satisfy any unpaid U.S. Trustee fees, and remit any additional funds (which will consist of net Business Sale proceeds and United Bank's cash collateral) to United Bank.

## BASES FOR RELIEF REQUESTED

28.    Upon the request of a party in interest, section 1112(b)(1) of the Bankruptcy Code provides that, absent unusual circumstances, a court "shall" dismiss a chapter 11 bankruptcy case (or convert such case to a case under chapter 7) "for cause."  11 U.S.C. § 1112(b)(1).  The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") changed the statutory language with respect to conversion or dismissal from permissive to mandatory.  *See* H.R. Rep. No. 109-31(I), at § 442, *reprinted in* 2005 U.S.C.C.A.N. 88, 94 (stating that the Act "mandate[s] that the court convert or dismiss a chapter 11 case, whichever is in the best interests of creditors and the estate, if the movant establishes cause, absent unusual circumstances."); *see also In re 3 Ram,* 343 B.R. 113, 119 (Bankr. E.D. Pa. 2006) (stating that "[u]nder new § 1112 when cause is found, the court shall dismiss or convert unless special circumstances exist that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate."); *Inc. In re TCR of Denver, LLC*, 338 B.R. 494, 498 (Bankr. D. Colo. 2006) (noting that

10

"Congress has purposefully limited the role of this Court in deciding issues of conversion or dismissal, such that this Court has no choice, and no discretion, in that it 'shall' dismiss or convert a case under Chapter 11 if the elements for 'cause' are shown."). For the reasons that follow, the Debtors submit that the Court should dismiss the Debtors' chapter 11 cases because cause exists and dismissal, as opposed to conversion to cases under chapter 7, would be in the best interests of the Debtors, their creditors and their estates.

A.  **Cause Exists To Dismiss These Chapter 11 Cases Because The Debtors Have Ceased Operations, Disposed Of All Of Their Assets And Have No Assets With Which To Confirm A Plan**

29.  Section 1112(b)(4) of the Bankruptcy Code provides a non-exhaustive list of sixteen grounds for dismissal. 11 U.S.C. § 1112(B)(4)(A)-(P). However, such a list is "viewed as illustrative rather than exhaustive, and the Court should 'consider other factors as they arise.'" *In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 561 (Bankr. M.D. Pa. 2007); *see also 3 Ram, Inc.*, 343 B.R. at 117 (stating that "[w]hile the enumerated examples of 'cause' to convert or dismiss a chapter 11 case now listed in § 1112(b)(4) have changed under BAPCPA, the fact that they are illustrative, [and] not exhaustive has not").

30.  Under section 1112(b)(4), "cause" includes the "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). Consequently, the dismissal of a chapter 11 case was found justified where "a feasible plan is not possible." *3 Ram, Inc.*, 343 B.R. at 117-18. Indeed, "[i]f [a] chapter 11 [debtor] cannot achieve . . . reorganization within the statutory requirements of the Bankruptcy Code, then there is no point in expending estate assets on administrative expenses. *Id.* at 118).

31.  As detailed above, the Debtors liquidated substantially all their assets in connection with the Business Sale and the Timberline Sale and their estates have been left with

11

minimal cash that is subject to United Bank's security interests. Consequently, since the sales, the Debtors' have existed solely to orderly wind-down their business and effectuate an efficient exit from these chapter 11 cases by, among other miscellaneous tasks: (a) satisfying all unpaid administrative expense claims against their estates; (b) properly and efficiently terminating and/or rolling over their benefit plans for former employees, including a 401(k) plan and medical benefits; (c) with the assistance BEC, auditing their 401(k) plan, preparing final tax returns and preparing for their dissolution under applicable state law; (d) timely satisfying their monthly reporting requirements; and (d) satisfying ongoing U.S. Trustee fees. The Debtors have no assets (other than limited cash that constitutes the collateral of United Bank) and there is no longer a business to reorganize or assets to distribute and, thus, no reason (or funds available) to pursue a plan of reorganization or liquidation. Keeping the Debtors' cases open will serve no purpose at this stage, but rather will only constitute a further drain on the limited cash the Debtors currently possess, which, with United Bank's consent, will be used to pay the only remaining administrative expense claims (those of the Debtors' professionals) and final U.S. Trustee fees.

**B.      Dismissal Is In The Best Interests Of The Debtors' Creditors And Their Estates**

32.     Once it is determined that cause exists to dismiss a debtor's chapter 11 case, courts must then evaluate whether dismissal is in the best interests of the debtor's creditors and the estate. *Rollex Corp. v. Associated Materials, Inc. (In re Superior Siding & Window, Inc.)*, 14 F.3d 240, 242 (4th Cir. 1994) (noting that "[o]nce 'cause' is established, a court is required to consider the second question of whether to dismiss or convert."). Based upon the facts of these cases and the status of the Debtors' estates, dismissal is in the best interests of the Debtors' creditors and their estates.

33. Dismissal would be in the best interests of creditors and an estate where a debtor has nothing to reorganize. *See Royal Trust Bank, N.A. v. Brogdon Inv. Co., Inc. (In re Brogdon Inv. Co.)*, 22 B.R. 546, 548-49 (Bankr. N.D. Ga. 1982) (favoring dismissal because there would be "no more going concern that would benefit from reorganization" and there would be "no assets remaining in the estate requiring administration."). As set forth in more detail above, the Debtors have nothing left to reorganize because they have sold all their assets, and they have no go-forward source of cash from which they could satisfy distributions to unsecured creditors pursuant to a chapter 11 plan or upon conversion to chapter 7. Indeed, the only remaining cash in the Debtors' estates is subject to properly perfected security interests and United Bank has only consented to the use of such cash to orderly wind-down the Debtors' business and/or satisfy remaining professional fee claims.

34. The alternative to dismissal—conversion—is unnecessary and would provide no benefit to creditors, but rather it would impose additional administrative costs upon the Debtors' estates without any source of funds to satisfy such costs. Indeed, under these circumstances, not only would a chapter 7 trustee lack any assets or funds to distribute to creditors, but also a trustee would have no funds to satisfy any costs of administration arising after conversion to cases under chapter 7 of the Bankruptcy Code. Moreover, the Debtors and their professionals have reviewed the Debtors' pre-petition business transactions, and there does not appear to be any basis to pursue any avoidance actions. The Debtors operated and generally paid their respective trade obligations in the ordinary course of business prior to the commencement of these cases and further, no party-in-interest has alleged that the Debtors made any preferential or fraudulent transfers during the months leading up to the Petition Date.

144270861.2

35.    Accordingly, the dismissal of the Debtors' chapter 11 cases would be in the best interests of creditors and the estates, and certainly would not be prejudicial to any creditors.

## **CONCLUSION**

36.    For the reasons set forth herein, the Court should enter orders dismissing each of the Debtors' chapter 11 cases.

WHEREFORE, the Debtors respectfully request the entry of an order in each of their respective chapter 11 cases dismissing their cases and providing such other and further relief the Court deems just and proper under the circumstances.

Dated: June 12, 2019                    **PERKINS COIE LLP**

By:  */s/ Brian A. Audette*
      Brian A. Audette (IL Bar No. 6277056)
      (Admitted Pro Hac Vice)
      131 S. Dearborn St., Suite 1700
      Chicago, IL  60603
      Telephone:  (312) 324-8534)
      baudette@perkinscoie.com

- and -

      Joe M. Supple, Bar No. 8013
      SUPPLE LAWS OFFICE, PLLC
      801 Viand St.
      Point Pleasant, WV  25550
      Telephone:  (304) 675-6249
      joe.supple@supplelaw.net

*Co-Counsel to the Debtors and Debtors in Possession*

144270861.2

**CERTIFICATE OF SERVICE**

      Brian A. Audette hereby certifies that on June 12, 2019, a copy of the foregoing *Debtors' Motion to Dismiss Chapter 11 Cases* was filed and served by this Court's CM/ECF system to all parties having registered in this case under the Court's CM/ECF system.

                                                    */s/ Brian A. Audette*

144270861.2